INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS, LOCAL 515, an Unincorporated Association of Persons, Appellant,

v.

AMERICAN ZINC, LEAD & SMELTING CO., a Corporation, Appellee.

No. 17400.

United States Court of Appeals Ninth Circuit.

Jan. 2, 1963.

Rehearing Denied March 11, 1963.

Nathan Witt, New York City, for appellant.

Paine, Lowe, Coffin, Herman & O'Kelly, Horton Herman, and Robert L. Simpson, Spokane, Wash., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

Appellant and appellee are parties to a collective bargaining agreement entered into on March 6, 1957,[1] relating to appellee's Pend Oreille County, Washington, mining operations. The case before us arises out of a dispute between the parties regarding provisions of the agreement covering deductions and checkoffs to be made by appellee from the wages of members of appellant, viz.:

"Section 3.05. In the event an employee shall sign a deduction Authorization Card (the form is shown in Schedule 'C'), and the card is in the Company's possession, the Company agrees, after the effective date of such card, to deduct the applicable initiation or reinstatement fee and/or Union membership dues from the first pay check issued the employee and thereafter the provisions of Section 3.06 shall govern.

\* \* \* \* \* \*

"Section 3.06. When the employee has met the requirements of Section 3.05 above, the Company shall deduct from the earnings each month

---

1. While entered into on March 6, 1957, the contract by its terms covers the period July 1, 1956, to June 30, 1958, and thereafter so long as extended by mutual written agreement. The record discloses that a contract containing terms and provisions very similar to those in the agreement now before the court was made between the parties and was in force from July 1, 1955 to June 30, 1956. Other collective bargaining agreements between the parties were in effect for some period of time before July 1, 1955, but the provisions of these agreements are not before us.

thereafter and pay to the Union the applicable Union membership dues, provided always that such deduction shall have been authorized by each employee from whose wages the deduction is made by written assignment filed with the Company as provided by Section 302(c) of the Labor Management Relations Act."

While the collective bargaining agreement was in force, members of appellant who were employed by appellee executed and delivered to appellee deduction authorization cards, addressed to appellee and in the form set out in Schedule "C" attached to the collective bargaining agreement.[2] In April, 1960, appellant's members voted an assessment of $10.00 per member per month as a special strike assessment to assist another local union with respect to a strike contemplated to be begun by the other local against the employer of its members. The assessment was to continue from month to month "until the conclusion of negotiations in the Coeur d'Alene and Metaline areas" and was to be paid by appellant's members in addition to appellant's established $5.00 per month per member union dues.

Appellant notified appellee of the assessment vote and requested appellee to withhold the assessments from the wages of employees who had delivered deduction authorization cards to appellee, and to pay over the assessments to appellant, pursuant to the provisions of the collective bargaining agreement. Appellee refused to check off the $10.00 strike assessment, though it continued to check off the $5.00 per month membership dues, and appellant thereupon filed its complaint in the district court. The complaint prayed, in a first cause of action, recovery of $3,145.00 and interest claimed to be due appellant from appellee for assessments due at the time of filing the complaint, and, in a second cause of action, recovery of the sums appellant claimed would be due it for assessments coming due by the date of trial. Each party moved in the district court for summary judgment in its favor. The district court, finding that there was no issue of fact in the case, denied appellant's motion and granted that of appellee, ruling (a) that the $10.00 strike assessments were not "membership dues" within the meaning of Section 302(c) (4), Labor Management Relations Act, 1947 (29 U.S.C.A. § 186(c) (4))[3] validating checkoffs, and (b) that such assessments were not "dues, initiation fees or reinstatement

2. "Schedule 'C'
  "To ................
  "I hereby assign to Local Union No. 515, I.U.M.M. & S.W., from my wages such sum per month as may be fixed hereafter by said Local Union as its uniform initiation fees, fines, assessments, and/or other monthly dues, as limited by the contract between the Union and the Company.
  "I hereby authorize and direct you to deduct such amounts as may be due by virtue of this assignment and authorization from my pay each month and to remit such amounts to said Local Union.
  "This assignment and authorization shall be irrevocable for a period of one year from the date hereof or until the termination of the collective bargaining agreement between the Company and the Union, whichever occurs sooner. I agree and direct that this assignment and authorization shall thereafter remain in effect until revoked by me, such revocation to be given by me in writing to the Com-

pany and the Financial Secretary of the Local Union. Such notices of revocation shall become effective for the calendar month following the month in which such written notice is received by the Company.
        "Employee's Name ..........
      "Witness        ..........
  "Date .........."

3. The pertinent part of Section 302 provides:
  "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.
  "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.

fees" within the meaning of the check-off provisions of the collective bargaining agreement. Judgment was entered dismissing appellant's complaint and awarding costs to appellee, and appellant appealed to this court. The district court had jurisdiction by virtue of Section 301, Labor Management Relations Act, 1947 (29 U.S.C.A. § 185); and this court has jurisdiction under the provisions of 28 U.S.C.A. § 1291

■ Appellant asserts, and we agree, that the district court misconstrued Section 302, Labor Management Relations Act, 1947, when it held that the term "membership dues" as used in the proviso (Section 302(c) (4)) does not include and thereby make lawful an employer's checkoff of "assessments" pursuant to written assignments from employee union members. The Department of Justice, the agency charged with enforcement of Section 302, after giving consideration to the penal character of the Section and its purpose, in an opinion [4] construed the term "membership dues" as used in Section 302 to cover "assessments". This construction of Section 302 has been followed by the National Labor Relations Board [5] and was very recently approved in National Labor Relations Board v. Food Fair Stores, Inc. et al., 307 F.2d 3 (3d Cir., 1962). On the basis of these authorities, we find the district court's construction of Section 302(c) (4) incorrect.

■ In urging upon us that the court below was accurate in its construction of Section 302(c) (4), appellee cites decisions of the National Labor Relations Board [6] holding that "assessments" are not within the term "periodic dues" as used in Sections 8(a) (3) (B) and 8(b) (2) of the National Labor Relations Act; and appellee argues that such decisions should be followed in construing Section 302(c) (4). This contention is well answered by the Third Circuit's exposition in National Labor Relations Board v. Food Fair Stores, Inc., supra, of the differences in purposes and policies involved in the sections:

"In acquiescing in the interpretation by the Department of Justice of Section 302 for the purpose of its administration of that statute in its penal aspects the Board did not bind itself to a similar construction in the administration of Sections 8(a) (3) and 8(b) (2). Two different policies are brought into play, the

"(c) The provisions of this section shall not be applicable * * *; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization:
"*Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; * * *." 29 U.S. C.A. § 186.

4. This opinion, found at 22 L.R.R.M. 46 (1948), reads in pertinent part:
"Does the term 'membership dues' in Section 302(c) of the Act include initiation fees and assessments as well as regular periodic dues, particularly where the union constitution provides that such fees and assessments are included in the term 'membership dues'?
"This identical question was presented to the Criminal Division as the result of

the National Bituminous Coal Wage Agreement of 1947 which contained a provision for the checkoff of membership dues, including initiation fees and assessments of the United Mine Workers of America and its various subdivisions, as authorized and approved by the International Union, UMWA. In a memorandum, dated July 10, 1947, we furnished the Attorney General with our views on this question, stating that initiation fees and assessments, being incidents of membership, should be considered as falling within the classification of 'membership dues'. We are still of this view."

5. International Harvester Co., 95 N.L.R.B. 730, 733 (1951); William Wolf Bakery, Inc., 122 N.L.R.B. 630 (1958); Food Fair Stores, Inc., 131 N.L.R.B. 756, 772 (1961).

6. International Harvester Co., 95 N.L.R.B. 730; Continental Can Company, Inc., 98 N.L.R.B. 1252; Anaconda Copper Mining Co., 110 N.L.R.B. 1925.

operative effects of which create no conflict. Section 8(a) (3) prevents a union shop employer from discharging an employee at the request of the union unless he has reason to believe that only failure to pay uniform 'periodic dues' or 'initiation fees' is the sole cause of his lack of union membership, while Section 302, under the interpretation of the Department of Justice, permits an employer with a valid union security contract to deduct assessments, providing the employee has voluntarily signed an authorization as prescribed in the section. The broad construction granted in the administration of Section 302 by the Department of Justice is consistent with the criminal character of the sanctions it embodies. The narrow construction applied by the Board to the enforcement of Sections 8(a) (3) and 8(b) (2) is consistent with the overall protection afforded by those sections to employees and equally creates no inconsistency with the enforcement of Section 302 for it is completely extrinsic thereto." 307 F.2d 12.

■ Turning to the alternative ground of the decision below—that assessments were not included within the term "Union membership dues" as used in the checkoff provisions of the collective bargaining agreement—we hold that the district court's ruling on this question was premature and should not have been made on the motions for summary judgment. In the light of what has been pointed out earlier regarding the interpretation of the words "membership dues" in Section 302, it is apparent that the meaning of the words "Union membership dues" used in Sections 3.05 and 3.06 of the collective bargaining agreement (when considered together with the language of the agreement's Schedule "C", Footnote 2, supra), is not so clear as to be self-evident; and that, accordingly, evidence outside the agreement itself is admissible to show what the parties meant by the words.

What the parties meant by the words is a controlling issue of fact in this case, to be determined in a trial at which the parties may offer evidence in aid of their respective interpretations of the language used. Severson v. Fleck, 251 F.2d 920 (8 Cir., 1958); Boro Hall Corp. v. General Motors Corp., 164 F.2d 770 (2d Cir., 1947); Rolle Mfg. Co. v. Marco Chemicals, Inc., 92 F.Supp. 218 (D.C., N.J., 1950); Moore's Federal Practice, Vol. 6, ¶ 56.17 [43], p. 2236.

Reversed and remanded for trial.