40 F.3d 1275
 309 U.S.App.D.C. 244, 63 USLW 2394,
129 Lab.Cas. P 33,183,
2 Wage & Hour Cas.2d (BNA) 737
 BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL-CIO, et
al., Appellants,
v.
Robert B. REICH, in his official capacity as Secretary of
Labor, Appellee.
Associated Builders and Contractors, Inc., Movant
Intervenor/Appellant.
 Nos. 93-5129, 93-5195.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 9, 1994.
Decided Dec. 9, 1994.
Rehearing Denied Feb. 16, 1995.*
 
 Terry R. Yellig, Washington, DC, argued the cause, for appellant Building and Const. Trades Dept., AFL-CIO. Gary L. Lieber, Washington, DC, argued the cause, for appellant Nat. Elec. Contractors Ass'n of America, Inc., and Sheet Metal and Air Conditioning Contractors Nat. Ass'n. With them on the briefs were Scott Robins, Washington, DC, and Stephen Burton, St. Paul, MN. Judith E. Rivlin, Washington, DC, entered an appearance, for appellant Sheet Metal Workers' Intern. Ass'n, Local Union 213.
 Matthew M. Collette, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause, for appellee. On the brief, for appellee Robert B. Reich, Secretary of the U.S. Dept. of Labor, were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., and William Kanter and Lowell V. Sturgill, Jr., Attys., U.S. Dept. of Justice, Washington, DC. Robert M. Loeb, Washington, DC, entered an appearance.
 Maurice Baskin, Washington, DC, argued the cause and filed the brief, for intervenor Associated Builders and Contractors, Inc.
 Before EDWARDS, Chief Judge, and SENTELLE and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 Dissenting opinion filed by Chief Judge EDWARDS.
 SENTELLE, Circuit Judge:
 
 
 1
 The Building and Construction Trades Department, AFL-CIO, and certain local labor organizations and contractor associations (collectively, "the unions") appeal the district court's grant of summary judgment in favor of Robert B. Reich, the Secretary of Labor (hereinafter "the Secretary" or "Labor"), in an action to review a decision by Labor's Wage Appeals Board that the unions' job targeting programs ("JTPs") violate the Davis-Bacon Act and Labor's regulations. See Building and Constr. Trades Dep't v. Reich, 815 F.Supp. 484, 486 (D.D.C.), reconsideration denied, 820 F.Supp. 11, 14 (D.D.C.1993). Associated Builders and Contractors, Inc. ("ABC") appeals the district court's denial of its motion to intervene and seeks to intervene on appeal. For the reasons set forth below, the decision of the district court is affirmed and the motion to intervene on appeal is denied.
 
 I. BACKGROUND
 
 2
 In 1988, ABC, a national trade association of construction employers, requested that the Administrator of Labor's Wage and Hour Division rule on the legality of deductions taken from the wages of workers to fund JTPs, which are union-initiated programs designed to maintain or improve the unions' share of certain construction markets by subsidizing the wage costs of union employers who bid on certain projects. Under a JTP, an employer takes out of its employees' wages payroll deductions authorized by the membership of the union, which are then paid into a union-managed fund. The union unilaterally decides what jobs to target and uses this fund to provide a wage subsidy either to the contractor or directly to the employees on the targeted job. Deductions from employees' pay to fund JTPs and the provision of JTP subsidies to union contractors occur on both public and private construction projects.
 
 
 3
 The Copeland Act, 18 U.S.C. Sec. 874 (1988), provides criminal penalties for anyone who forces a construction worker employed on a public project to give up any part of the compensation to which he is entitled under his employment contract. The Davis-Bacon Act, 40 U.S.C. Sec. 276a(a) (1988), provides that all construction contractors on public construction projects are required to pay laborers and mechanics employed directly on the site of the work the "prevailing" wage and that wage has to be paid "without subsequent deduction or rebate on any account," "regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics...." Labor has issued anti-kickback regulations under the Copeland Act, which are also designed to aid in the enforcement of the prevailing wage provisions of the Davis-Bacon Act. See 29 C.F.R. Sec. 3.1 (1994). Section 3.5 provides that certain enumerated deductions may be made without application to and approval of Labor. Subsection 3.5(i) specifically permits deductions to pay regular union initiation fees and membership dues, not including fines or special assessments. 29 C.F.R. Sec. 3.5. Section 3.6 states that some payroll deductions are permissible with Labor's approval and any contractor or subcontractor may apply to Labor for permission to make any deduction not permitted under section 3.5. 29 C.F.R. Sec. 3.6. Labor may grant such permission whenever it finds that the "contractor, subcontractor, or any affiliated person does not make a profit or benefit directly or indirectly from the deduction either in the form of a commission, dividend, or otherwise...." 29 C.F.R. Sec. 3.6(a).
 
 
 4
 The Administrator determined that while the JTP funds collected by the unions are not wage kickbacks prohibited by the Copeland Act, JTP deductions violate prevailing wage rate requirements of the Davis-Bacon Act and are not permissible under either section 3.5 or section 3.6 because such deductions benefit employers. The unions petitioned the Wage Appeals Board to review and overturn the Administrator's decision, and Labor and ABC opposed the petition.
 
 
 5
 In Building and Construction Trades Unions Job Targeting Programs, Wage App. Bd. Case No. 90-02 (June 13, 1991), the Wage Appeals Board upheld the determination that JTPs violate the Davis-Bacon Act prevailing wage rate requirements and the relevant regulations. The Board reasoned that the Davis-Bacon Act requires the payment of prevailing area wages and that Labor's regulations, which generally prohibit payroll deductions unless specifically enumerated or approved by Labor, are intended to effectuate that end. While the unions claimed that the JTP deductions are authorized under section 3.5(i) as membership dues, the Board concluded that JTP deductions are not union membership dues as that term is ordinarily understood. The Board considered the effect of Communications Workers of America v. Beck, 487 U.S. 735, 745, 108 S.Ct. 2641, 2648, 101 L.Ed.2d 634 (1988), which held that periodic dues under section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. Sec. 158(a)(3) (1988), were limited to funds expended for the core functions of collective bargaining, contract administration, and grievance adjustment. One Board member relied on Beck in finding that JTP deductions from non-union employees' wages violate the Davis-Bacon Act because they go beyond the funds needed for the core functions. The other two Board members, however, found the discussion of Beck unnecessary to their decision.
 
 
 6
 The unions sought review of the adverse decision of the Wage Appeals Board in the district court, and ABC requested intervention as of right or, in the alternative, permissive intervention. The district court, adopting the report and recommendation of Magistrate Judge Kay, denied ABC intervention, reasoning that the Davis-Bacon Act was enacted to protect employees rather than employers. See United States v. Binghamton Constr. Co., 347 U.S. 171, 176-77, 74 S.Ct. 438, 441-42, 98 L.Ed. 594 (1954). Considering cross-motions for summary judgment, the district court granted Labor's motion on the basis that Labor's interpretation of its own regulations are reasonable and consistent with the purposes of the Davis-Bacon Act.
 
 
 7
 The district court first held that the Wage Appeal Board's conclusion that wages withheld under JTPs are not membership dues is not plainly erroneous or inconsistent with section 3.5(i) and that the Board's interpretation was consistent with the relevant regulations as a whole. Specifically, the court found it consistent to disallow contractors from making JTP payroll deductions without Labor's approval under section 3.5(i) when Labor could not approve such deductions under section 3.6 because the contractor would benefit, directly or indirectly, from the deduction. In determining whether the regulation was, in turn, consistent with the Davis-Bacon Act, the court employed the analysis mandated by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (court reviewing agency's interpretation of statute it administers faces two questions: did Congress directly speak to the precise question and, if not, is the agency's interpretation based on a permissible construction of the statute). Applying the first step of the Chevron analysis, the district court ascertained that the language of the Davis-Bacon Act did not reveal a clear congressional intent inconsistent with the regulation at issue.
 
 
 8
 Although concluding that the statute does not speak directly to the issue, the court observed that the fact that JTPs collect wages from employees in order to pay contractors in exchange for continued or increased employment is inconsistent with the purpose of the Davis-Bacon Act, which is to prevent contractors using cheap labor from unfairly winning contracts by underbidding their local competitors. See Universities Research Ass'n v. Coutu, 450 U.S. 754, 773-74, 101 S.Ct. 1451, 1462-63, 67 L.Ed.2d 662 (1981). Thus, in the second step under Chevron, the district court easily determined that Labor's interpretation of the statute is plainly reasonable and consistent with the Davis-Bacon Act's purpose of protecting local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area. See id. at 773, 101 S.Ct. at 1462.
 
 
 9
 The court rejected the unions' argument that due to the related goals and histories of the Davis-Bacon Act and the Copeland Act, the Davis-Bacon Act was merely a civil counterpart to the Copeland Act applicable only to the same behavior that the Copeland Act proscribes. It concluded that while the Copeland Act focuses on coerced forfeiture of employees' wages, the Davis-Bacon Act may reach agreements between contractors and employees to reduce wages below prevailing rates.
 
 II. THE UNIONS' APPEAL
 A. Standard of Review
 
 10
 Because the parties agree that there are no genuine issues of material fact in dispute, this court's only task on appeal is to ensure that the district court properly applied the relevant law to the undisputed facts. Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 284 (D.C.Cir.1993). Like the district court, our review of Labor's decision is deferential because where Congress has not "directly spoken to the precise question at issue," Chevron, 467 U.S. at 842, 104 S.Ct. at 2781, we must defer to the agency's interpretation if it is merely rational and based upon a permissible construction of the statute. NLRB v. United Food & Commercial Workers Union, Local 23, 484 U.S. 112, 123, 108 S.Ct. 413, 420, 98 L.Ed.2d 429 (1987).
 
 B. Interpretation of the Davis-Bacon Act
 
 11
 The Davis-Bacon Act, enacted in 1931, is "a minimum wage law designed for the benefit of construction workers." United States v. Binghamton Constr. Co., 347 U.S. at 178, 74 S.Ct. at 442. "The Act was 'designed to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area.' " Universities Research Ass'n, 450 U.S. at 773, 101 S.Ct. at 1463 (quoting House Committee on Education and Labor, Legislative History of the Davis-Bacon Act, 87th Cong., 2d Sess., 1 (Comm.Print 1962)). In 1935, Congress determined that the original Davis-Bacon Act was "inadequate to cope with many of the practices to which contractors have resorted," S.REP. NO. 1155, 74th Cong., 1st Sess. 2 (1935), and it therefore amended the Act to add, inter alia, language requiring payment to laborers and mechanics without "subsequent deduction or rebate on any account ... regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics...." H.R.REP. NO. 1756, 74th Cong., 1st Sess. 3-5 (1935); 40 U.S.C. Sec. 276a(a).
 
 
 12
 A year earlier, in 1934, Congress had enacted the Copeland Act barring kickbacks, which are the coerced return of wages to an employer. See 18 U.S.C. Sec. 874 (based on 40 U.S.C. Sec. 276b (1940)) ("[w]hoever, by force, intimidation, or threat of procuring dismissal from employment or by any other manner whatsoever induces any person employed [in a federal construction project] ... to give up any part of the compensation to which he is entitled under his contract of employment shall be fined not more than $5,000 or imprisoned not more than five years, or both.").
 
 
 13
 The unions maintain that the Davis-Bacon Act and the Copeland Act must be construed in pari materia and thus the Davis-Bacon Act cannot properly reach conduct that is not also in violation of the Copeland Act. Specifically, the unions assert that based on legislative history, the Davis-Bacon Act's command that the contractor or subcontractor pay employees the full amount accrued "without subsequent deduction or rebate"" should be construed to apply only to kickbacks as described in the Copeland Act. Notably, however, the legislative history of the amendments adding this language to the Davis-Bacon Act suggests no such limitation, and it implies that the Act's coverage is broader than the Copeland Act's ban on the coerced return of wages. The amendments are described as placing on the contractor the burden of seeing that the "illegal practices of exacting rebates or kick-backs is eliminated," providing for employees "aggrieved by failure to pay the required rates of wages or by the kick-back," and requiring the payment of the minimum rate to all laborers and mechanics, thus eliminating an evasive device whereby individual laborers formed partnerships under which the member partners received less than the prevailing wage. S.REP. NO. 1155, 74th Cong., 1st Sess. 3 (1935); H.R.REP. NO. 1756, 74th Cong., 1st Sess. 3-5 (1935) (emphasis added).
 
 
 14
 The unions maintain that United States v. Carbone, 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904 (1946), supports their position. That case involved criminal prosecution under the Copeland Act of union officials who had coerced the payment of union initiation fees from laborers employed in a closed shop and kept the fees instead of turning them over to the union organization. The Supreme Court determined that the union officials did not violate the Copeland Act because nothing in the Act's history suggests it was intended to affect legitimate union activity, nor was it designed to punish unlawful acts by union officials that are not in the nature of kickbacks. Id. at 638-40, 66 S.Ct. at 736-38. Since the funds coerced by the union officials in Carbone were not subsequently returned to the employer, however, the case sheds little light on the application of the Davis-Bacon Act to JTPs, which are contractual rebates of wages to subsidize employers' wage costs.
 
 
 15
 Beyond the inconsistency of the JTP deductions with the literal language of 40 U.S.C. Sec. 276a(a), Labor's interpretation of the Act as precluding those deductions furthers the goals of the legislation. JTP deductions from wages of mechanics and laborers on Davis-Bacon projects have the effect of artificially increasing the prevailing local rate wage, which must be met by non-union employers, by the inclusion in the local average of the pre-deduction wages paid by the unionized employers before the deduction. The union employees then suffer a reduction in their wages (potentially, though not always, below the prevailing wages) through deductions precluded by the language of the Act. Further, the JTP funding scheme creates a second opportunity for doing violence to the goals of the Act when the targeted programs drawing on the fund are also Davis-Bacon projects in that the employers on the recipient project are paying their employees in part with a subsidy derived from deductions taken from other Davis-Bacon employees. In short, that the interpretation of the Act advanced by Labor is broader than the Copeland Act is immaterial--both the language and the goals of the Davis-Bacon Act, while overlapping those of the Copeland Act, are broader as well. Labor's interpretation, consistent with that greater breadth, is rational and based upon a reasonable interpretation of the statute.
 
 C. Interpretation of 29 C.F.R. Sec. 3.5(i)
 
 16
 The unions argue that even if Labor's interpretation of the Davis-Bacon Act is correct, the funds deducted for JTPs are actually membership dues, the collection of which is expressly permitted by section 3.5(i). The unions maintain that Labor's interpretation of this regulation to disallow JTP deductions as membership dues cannot be reconciled with the regulations overall or the general purposes of the Davis-Bacon Act. Section 3.5, which lists deductions permissible without Labor's approval, specifically allows deductions for membership dues in subsection (i), and the unions maintain that it is significant that this subsection does not explicitly restrict such deductions to membership dues that do not benefit contractors or subcontractors.
 
 
 17
 Neither the Davis-Bacon Act nor the regulations specifically address deductions for programs such as JTPs, although the Act does bar subsequent rebates and deductions, and they do not define the scope of the term "membership dues." Because Congress has not directly spoken to this precise issue, the question then becomes whether Labor's interpretation of this term is reasonable and consistent with the Davis-Bacon Act. See Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82. The Wage Appeals Board concluded that section 3.5(i) should be interpreted consistently with one of the fundamental principles underlying the Davis-Bacon Act: that wages paid to construction employees on public projects should not revert to contractors. This conclusion, which was upheld by the district court, likewise seems reasonable to this court. The Act plainly states that the contractor shall pay employees the prevailing wage "without subsequent deduction or rebate" and "regardless of any contractual relationship" between the contractor and the employees. 40 U.S.C. Sec. 276a(a). This plain language creates a somewhat close question on whether step two of the Chevron analysis is even required, and it certainly does not suggest that the Wage Appeals Board's interpretation is in any way unreasonable.
 
 
 18
 The unions argue that because membership dues benefiting contractors are not specifically banned in the regulations, Labor's interpretation of the term as excluding JTP fund deductions is therefore unwarranted. But Labor's interpretation of its own regulations is entitled to deference even greater than that afforded its interpretation of the statute under Chevron. As the Supreme Court has "often stated, provided an agency's interpretation of its own regulation does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (internal quotations and citations omitted).
 
 
 19
 Section 3.5 generally ensures that the listed deductions do not benefit the employer. See, e.g., 29 C.F.R. Sec. 3.5(c) (deductions for amounts required by court process to be paid to another permitted "unless the deduction is in favor of the contractor, subcontractor or any affiliated person"); Sec. 3.5(d)(3) (deductions for contributions to funds to provide medical care, pensions, death benefits, and other benefits allowed provided that "[n]o profit or other benefit is otherwise obtained, directly or indirectly, by the contractor or subcontractor or any affiliated person"); Sec. 3.5(k) (deductions for the cost of safety equipment permitted "if the cost on which the deduction is based does not exceed the actual cost to the employer where the equipment is purchased from him and does not include any direct or indirect monetary return to the employer where the equipment is purchased from a third person"). Section 3.6 of the regulations also provides that contractors may apply to Labor for permission to make any deduction not listed under section 3.5. 29 C.F.R. Sec. 3.6. Such permission, however, may only be granted if the Secretary finds that the "contractor, subcontractor, or any affiliated person does not make a profit or benefit directly or indirectly from the deduction...." 29 C.F.R. Sec. 3.6(a). It is clear that these regulations evince an overarching concern that deductions from the employee's prevailing wage under the Davis-Bacon Act do not benefit the employer directly or indirectly. Accordingly, Labor's decision that JTP deductions, deductions that benefit employers, are not permissible under section 3.5(i) as membership dues is not a plainly erroneous interpretation of its own regulations.
 
 
 20
 D. Relationship to the NLRA and the Labor-Management Relations Act
 
 
 21
 Additionally, the unions state that the National Labor Relations Board regards deductions for JTPs as "periodic dues" under the NLRA, 29 U.S.C. Sec. 158(a), based on its decision in Detroit Mailers Union No. 40, 192 N.L.R.B. 951 (1971), which held that dues that are periodic, uniformly required, and not for a purpose that is inimical to public policy qualify as periodic dues under the NLRA. The unions argue that to harmonize the interpretation of the Davis-Bacon Act with the NLRA, JTP deductions, which are periodic and uniformly required, should likewise be regarded as permissible membership dues by Labor. The unions' argument only goes so far, however, since they assert that the most recent holding in this area, Communications Workers of America v. Beck, is not relevant. In Beck, 487 U.S. at 745, 108 S.Ct. at 2648, the Court concluded that the periodic dues that a non-union member may be required to pay under the NLRA are limited to those funds necessary for collective bargaining, grievance adjustment, and contract administration. Thus, even if the NLRA were relevant to the meaning of membership dues in Labor's regulations, recent NLRA case law does not support the unions' argument because JTP deductions would not qualify as periodic dues under that Act.
 
 
 22
 The Labor-Management Relations Act ("LMRA") specifies that its ban on employers paying money to labor organizations does not apply to "money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment...." 29 U.S.C. Sec. 186(c) (1988). The unions state that the Department of Justice, which is charged with enforcement of the LMRA, holds the view that under the Act, membership dues include assessments, and they further note that some courts have approved this interpretation. See International Union of Mine, Mill and Smelter Workers Local 515 v. American Zinc, Lead & Smelting Co., 311 F.2d 656, 659 (9th Cir.1963) (special strike assessment may constitute membership dues under LMRA). None of this, however, overcomes the language of section 3.5(i), stating that permissible deductions for regular initiation fees and membership dues do not include "special assessments." 29 C.F.R. Sec. 3.5(i). In sum, nothing in the interpretation of similar terms in the NLRA and the LMRA establishes that Labor's interpretation of the Davis-Bacon Act is unreasonable or of its own regulation is plainly erroneous.
 
 III. ABC'S APPEAL AND MOTION TO INTERVENE
 
 23
 ABC's appeal is likewise without merit. We review the district court's decision to deny intervention under an abuse of discretion standard. See Foster v. Gueory, 655 F.2d 1319, 1324 (D.C.Cir.1981). Not only does the district court decision survive that limited inquiry, it appears to be well grounded in the law.
 
 
 24
 Federal Rule of Civil Procedure 24(a)(2) provides that a party seeking to intervene as of right must satisfy four requirements: 1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action. See, e.g., Nuesse v. Camp, 385 F.2d 694, 699 (D.C.Cir.1967). Additionally, we have held that because an intervenor participates on equal footing with the original parties to a suit, a movant for leave to intervene under Rule 24(a)(2) must satisfy the same Article III standing requirements as original parties. City of Cleveland v. Nuclear Regulatory Comm'n, 17 F.3d 1515, 1517 (D.C.Cir.1994) (per curiam); see also Southern Christian Leadership Conference v. Kelley, 747 F.2d 777, 779 (D.C.Cir.1984).
 
 
 25
 While there may be some dispute whether ABC has an interest sufficient to confer Article III standing, it is clear that ABC fails another part of the Rule 24(a)(2) test. Specifically, ABC's interest was adequately represented by Labor before the district court and continued to be adequately represented on appeal. Notably, in its brief as amicus curiae and at oral argument, ABC offered no argument not also pressed by Labor. Accordingly, the district court did not err in denying ABC intervention.
 
 
 26
 The Federal Rules of Appellate Procedure do not provide for intervention on appeal except in proceedings to review agency action, but do not expressly preclude intervention in appeals from the district court. FED.R.APP.P. 15(d). In International Union v. Scofield, 382 U.S. 205, 217 n. 10, 86 S.Ct. 373, 381 n. 10, 15 L.Ed.2d 272 (1965), the Court recognized that "the policies underlying intervention [in district court] may be applicable in appellate courts." We see no reason to relax the standards for intervention applicable in the district court. Therefore, for the same reasons that we affirm the district court's decision to deny intervention, we deny ABC's application to intervene before this court.
 
 IV. CONCLUSION
 
 27
 Because Labor's interpretation of the Davis-Bacon Act and its own regulations is clearly reasonable in light of the Act's language and purpose, the district court's grant of summary judgment is affirmed. Furthermore, because ABC's interest is adequately represented by Labor, the district court's denial of intervention is affirmed and ABC's application to intervene on appeal is denied.
 
 HARRY T. EDWARDS, Chief Judge, dissenting:
 
 28
 In the wake of the Great Depression, Congress amended the Davis-Bacon Act, 40 U.S.C. Secs. 276a to 276a-5 (1988), to prevent contractors on federal construction projects from extorting their laborers' wages under the threat of termination. Today, the majority affirms the Secretary of Labor's interpretation of that same Act to prevent construction laborers from voluntarily contributing a percentage of their wages to their unions as part of a plan to improve their own future employment prospects. This is surely an ironic result.
 
 
 29
 This case presents a dispute over the legality of union "job targeting" programs. Under these programs, union members authorize funds to be deducted from their pay on behalf of the union, to whom the funds are remitted. The union then holds the funds in a special account to be used in the future to support unionized contractors who are competing against non-union contractors in bids for construction contracts. The money in the special account is under the sole and strict control of the union, and there is no guarantee that an employer who is authorized by employees to deduct funds for contribution to the program will ever benefit from subsequent union support. Nonetheless, the Secretary, acting through the Labor Department's Wage Appeals Board ("Board"), found that the assessments used to fund job targeting programs, if taken from wages paid on federal construction projects, violate regulations implementing both the Davis-Bacon Act and the Copeland Act, 18 U.S.C. Sec. 874 (1988).
 
 
 30
 The Secretary does not contend that the Copeland Act supports the Board's decision, nor could he. The Supreme Court made clear in United States v. Carbone, 327 U.S. 633, 640, 66 S.Ct. 734, 737, 90 L.Ed. 904 (1946), that the Copeland Act does not reach any alleged "evils relating to the internal management of unions." It prohibits only "the narrow problem of kickbacks which Congress sought to remedy." Id. at 642, 66 S.Ct. at 738. All parties agree that job targeting assessments are not kickbacks. Thus, if authority for the Secretary's regulation exists, it must be provided by the Davis-Bacon Act.
 
 
 31
 The Davis-Bacon Act, however, provides no such authority. Its plain language provides for the payment of prevailing local wages without subsequent deduction by the "contractor or his subcontractor" in the singular, not contractors or subcontractors in the plural. 40 U.S.C. Sec. 276a(a). In other words, the language focuses the Act narrowly on deductions taken for use by the very contractor or subcontractor who signs the paycheck. Under job targeting programs, however, deductions are taken for use by unions. Unions place these funds into an account from which they may disburse money to any union contractor in a given geographic area. The money taken may or may not ever benefit the contractor who paid the wages from which it was deducted. Even if the deducting contractor does receive job targeting program funds, it does so only on terms dictated by the union. The plain language of the Davis-Bacon Act does not prohibit deductions in support of such job targeting.
 
 
 32
 In my view, the Secretary's interpretation perverts the purpose of the Davis-Bacon Act, transforming a statute designed to benefit laborers into one that bars them from benefiting themselves. Accordingly, I dissent.
 
 I.
 
 33
 In recent years, contractors who have signed collective bargaining agreements with unions have faced growing competition in contract bidding from non-union contractors who pay wages lower than the collectively bargained rate. Faced with the prospect of losing future work opportunities to their non-union competitors, unions have responded with job targeting programs. These programs eliminate the labor cost differential between union and non-union contractors by reimbursing union contractors for a portion of their wage expenses. Specifically, under a job targeting program, the union membership voluntarily assesses itself a specified percentage of each member's gross pay. That money is deducted from the members' pay and deposited into an account allocated for operation of the job targeting program. Union laborers adopt these programs democratically, and only they administer the job targeting program account. Employers play no role in its management. Indeed, a union contractor seeking assistance from a job targeting program must identify a prospective project and submit a request to the union prior to bidding for that project. The union then unilaterally decides which projects to subsidize and sets the amount of the subsidy. Such a subsidy may take either of two forms. On some jobs, the union allows the contractor to pay employees at a rate less than the collectively bargained rate, and the job targeting program makes up the difference through direct payments to the employees. On other jobs, the contractor pays employees the full collectively bargained rate, and the job targeting program partially reimburses the contractor.
 
 
 34
 It is undisputed that there is no statutory provision expressly prohibiting job targeting programs. However, the Secretary claims that he has properly construed regulations promulgated pursuant to the Copeland and Davis-Bacon Acts to outlaw such programs. Both statutes protect laborers' wages. The Copeland Act establishes a criminal penalty for the exaction of wage "kickbacks"--the coerced return of wages paid to a laborer--on federal construction projects. See 18 U.S.C. Sec. 874 (prohibiting use of "force, intimidation, or threat of procuring dismissal from employment," or any other means, to induce a person to give up compensation due under an employment contract on a federally financed construction project). The Davis-Bacon Act complements the Copeland Act, requiring contracts for more than $2,000 worth of construction work on federal projects to include a stipulation that the contractor will pay all laborers prevailing local wages "without subsequent deduction or rebate on any account." 40 U.S.C. Sec. 276a(a). The regulation relied upon by the Board implements both statutes by requiring federal construction contracts to provide for payment of prevailing local wages without subsequent deduction or rebate, except for payroll deductions specifically authorized by the Secretary's regulations. 29 C.F.R. Sec. 5.5(a)(1) (1993). In this case, the Board held that a regulation allowing deductions to pay union "membership dues," 29 C.F.R. Sec. 3.5(i) (1993), does not authorize job targeting program assessments.
 
 
 35
 The Labor Department nowhere defines the term "membership dues" in its regulations, and the parties search in vain for clues to its meaning. The Secretary contends that the term should be construed consistently with the term "periodic dues" in the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(3) (1988), as interpreted narrowly by the Supreme Court to encompass only payments made to support union activities "germane to collective bargaining, contract administration, and grievance adjustment." Communications Workers of America v. Beck, 487 U.S. 735, 745, 108 S.Ct. 2641, 2648, 101 L.Ed.2d 634 (1988). By contrast, Appellants favor construing the term consistently with the same "periodic dues" language as interpreted broadly in a recent advice memorandum by the National Labor Relations Board General Counsel to encompass job targeting assessments. See NLRB, OFFICE OF THE GENERAL COUNSEL, ADVICE MEMORANDUM (July 8, 1993), reprinted in Addendum to Brief on Behalf of the Appellant-Appellee Unions and Employer Associations at A-9. In fact, either construction is possible. The term "membership dues" inherently neither includes nor excludes job targeting program assessments. Faced with such ambiguity, the court normally would defer to the Board's interpretation "unless it is plainly erroneous or inconsistent with the regulation,"," Secretary of Labor v. Western Fuels-Utah, Inc., 900 F.2d 318, 321 (D.C.Cir.1990) (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)), or unless it would unfairly surprise those whom it would penalize, see Gates & Fox Co., Inc. v. Occupational Safety and Health Review Comm'n, 790 F.2d 154, 156 (D.C.Cir.1986) (Scalia, J.) (due process clause prevents deference paid to administrative interpretation "from validating the application of a regulation that fails to give fair warning of the conduct it prohibits or requires"); see also Rollins Envtl. Serv., Inc. v. EPA, 937 F.2d 649, 654 (D.C.Cir.1991) (Edwards, J., dissenting and concurring in part) ("If a regulation does not give 'fair warning' of the conduct it prohibits or requires, no violation can be found."). Here, however, the Board simply has provided the court with nothing to defer to save some misguided notions of statutory policy.
 
 II.
 
 36
 The three separate opinions of the Board fail to explain the statutory basis for the prohibition of authorized payroll deductions to support job targeting programs. The Board members' opinions also fail to offer any clear basis for the decision that "membership dues" do not encompass job targeting program assessments.
 
 
 37
 Two members of the Board expressly disavowed any reliance on the Supreme Court's Beck decision. See Building & Constr. Trades Unions Job Targeting Programs, WAB Case No. 90-02, at 10 (June 13, 1991) (Member Peters, concurring), reprinted in Joint Appendix ("J.A.") 38; id. at 11 (Member Rothman, concurring and dissenting in part), reprinted in J.A. 39. Member O'Brien, in what is ostensibly the Board's majority opinion, suggested that "membership dues" must exclude job targeting program assessments to prevent the skewing of locally prevailing wages. Id. at 9, reprinted in J.A. 37. However, neither of his colleagues endorsed this view, and the Secretary has not pursued it in this litigation. The only view that appears to have persuaded a majority of the Board is that "membership dues" must exclude job targeting program assessments to effectuate the general policy of the Copeland and Davis-Bacon Acts that wages may not revert to the benefit of contractors. Thus, Member O'Brien stated that
 
 
 38
 [t]he Secretary's Part 3 Regulations are designed to effectuate the public policies of both the Copeland and the Davis-Bacon Acts, which are complementary statutes. The substantive provisions of the Copeland Act prohibit the return of wages to an employer, just as the Davis-Bacon Act requires the payment of wages "without subsequent deduction or rebate on any account." 40 U.S.C. Sec. 276a.
 
 
 39
 Id. at 8-9, reprinted in J.A. 36-37. Member Peters concurred on the basis of "the public policy considerations ... noted in the majority opinion." Id. at 10, reprinted in J.A. 38.
 
 
 40
 What is most noteworthy about the Board's decision is that it is devoid of any coherent interpretation of either Act. Member O'Brien's sole discussion of statutory language was his reference to the Davis-Bacon Act's requirement that prevailing local wages be paid "without subsequent deduction or rebate on any account." Id. at 9 (quoting 40 U.S.C. Sec. 276a(a)), reprinted in J.A. 37. All parties agree, however, that this language cannot be read literally to bar all wage deductions, for, as the Labor Department's regulations make evident, numerous deductions from employees' wages are legal, and, indeed, are necessary to comply with other laws and generally to conduct day-to-day affairs. See, e.g., 29 C.F.R. Sec. 3.5(a) (1993) (allowing deductions to comply with federal, state, or local law); id. Sec. 3.5(d) (allowing deductions constituting contributions to funds established for employee medical care, pensions, etc.); id. Sec. 3.5(h) (allowing deductions to make charitable contributions). The Secretary offers the court a solution to this interpretive puzzle: he argues that the language of the Davis-Bacon Act takes its content from the Labor Department's regulations. However, a fundamental principle of administrative law holds that "regulations, in order to be valid, must be consistent with the statute under which they are promulgated." United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977); see also Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (agency's interpretation of its own regulation must be given controlling weight so long as it "does not violate the Constitution or a federal statute"). The Secretary's argument turns this principle on its head. The statute cannot take its content from the regulations; the regulations must take their content from the statute. The Secretary's argument, therefore, fails to clarify the Board's vague pronouncements.
 
 
 41
 The Board suggests that the statutes embody a policy forbidding wages paid on federal construction contracts from reverting to the benefit of contractors. However, the deductions that fund job targeting programs are not taken to benefit contractors. The deductions are taken to benefit union members through increased future employment opportunities. Although unionized contractors in general do benefit from receiving job targeting program dollars, this benefit is incidental to the purpose of the programs, and the reason for which they are adopted. The Board ignores this distinction in blind adherence to its view that the authorizing statutes reflect a policy prohibiting wages from providing any benefit to contractors, no matter how incidental.
 
 III.
 
 42
 In my view, the Board's understanding of the statute is simply wrong. Applying "traditional tools of statutory construction," Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984), I find nothing in either the Copeland Act or the Davis-Bacon Act to support the Board's conclusion. In fact, the language and legislative history of these statutes demonstrates that Congress intended to prohibit a specific practice that all parties agree is not at issue here. Thus, no deference to the Board's interpretation is warranted. See id. ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").
 
 
 43
 Of the two statutes, Congress passed the Copeland Act first. The original Davis-Bacon Act, ch. 411, 46 Stat. 1494 (1931), requiring payment of prevailing wages on federal construction contracts, was enacted in 1931. Soon afterward, however, Congress discovered numerous enforcement problems, not the least of which was "the so-called 'kick-back racket' by which a contractor on a Government project pays his laborers wages at the rate the Government requires him to pay them, but thereafter forces them to give back to him a part of the wages they have received." H.R.REP. NO. 1750, 73d Cong., 2d Sess. 1 (1934). Congress responded to this problem in 1934 with the Copeland Act.
 
 
 44
 As noted above, the Secretary does not contend that the Copeland Act supports the Board's decision. So the only question is whether such authority can be found in the Davis-Bacon Act. The Board cites to nothing in the terms of the statute, resting instead on its vague reading of "statutory policy." But it is impossible to divine a "policy" prohibiting job targeting programs from a statute that focuses narrowly on deductions taken for use by the very contractor or subcontractor who pays the employees. See 40 U.S.C. Sec. 276a(a). Under job targeting programs, deductions voluntarily authorized by the affected employees are taken for use by the unions, not the contractor who deducts the funds. The Davis-Bacon Act does not prohibit such an arrangement.
 
 
 45
 All parties agree that there is nothing unlawful about unions adopting job targeting programs to support bids to get work for their members--the only question here is the arrangement used to collect the funds. At oral argument, counsel for the Secretary conceded that the regulations do not prohibit unions from increasing their general dues assessment and then internally allocating a portion of that assessment to fund job targeting programs. The Secretary's interpretation thus elevates form over substance. It attributes to Congress the trivial purpose of prohibiting each and every deduction that might incidentally revert to benefit a contractor--but only if specifically earmarked as such. This makes no sense, and the statute certainly does not require such a result.
 
 IV.
 
 46
 The legislative history of the Davis-Bacon Act further refutes the Board's position. It demonstrates that, in requiring "the contractor or his subcontractor [to] pay all mechanics and laborers ... unconditionally ... and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment," 40 U.S.C. Sec. 276a(a), Congress intended to prohibit only the same forced wage rebates already criminally proscribed by the Copeland Act. Shortly after Congress passed the Copeland Act, a subcommittee of the Senate Committee on Education and Labor reported on its investigation of "the relationship between employees and contractors on public works." S.REP. NO. 332, 74th Cong., 1st Sess. 1 (1935). This report described how contractors used numerous schemes to evade the Davis-Bacon Act's prevailing wage rate requirement and recommended legislation to address these problems. Among the committee's observations was that,
 
 
 47
 [a]lthough the Copeland Act has not been on the statute books sufficiently long to make a full report upon its effectiveness, it is understood that it has been difficult to conduct successful prosecutions against contractors on projects where complaints of the "kickback" have been made, owing to the fact that it is not easy to obtain evidence showing that the general contractor or subcontractors were the beneficiaries of rebates exacted by foremen or other employees from workmen. Legislation is desirable which would cause the general contractor to be primarily responsible for making restitution to any workman on the project from whom refunds were exacted, regardless of whether the person who received the refund was the contractor himself a subcontractor or agent. Such an amendment would make enforcement easier by tending to compel the general contractor, for his own protection, to police the wage practices of the subcontractors.
 
 
 48
 Id., pt. 2, at 6. Later in the report, the committee followed up on this discussion by specifically recommending legislation "[t]o provide remedies for laborers and mechanics aggrieved by forced rebates or failure to pay the prevailing rate of wages." Id., pt. 2, at 7 (emphasis added). Congress incorporated this recommendation in S. 3303, a bill passed in 1935 to amend the Davis-Bacon Act by adding the "without subsequent deduction or rebate" language. See H.R.REP. NO. 1756, 74th Cong., 1st Sess. 2 (1935) (stating that all of the investigatory committee's recommendations "are embodied in the bill"); S.REP. NO. 1155, 74th Cong., 1st Sess. 2 (1935) (same); see also 79 CONG.REC. 12,073 (1935) (statement of Sen. Walsh) (S. 3303 would "provide remedies for laborers and mechanics aggrieved by forced rebates or failure to pay the prevailing rate of wages") (emphasis added).
 
 
 49
 Most significantly, both the House and Senate reports on the 1935 Davis-Bacon Act amendment speak directly to the purpose of the "without subsequent deduction or rebate" language, stating that it was designed to place upon contractors "[t]he burden of seeing to it that the illegal practices of exacting rebates or kick-backs is [sic] eliminated." H.R.REP. NO. 1756 at 3; S.REP. NO. 1155 at 3. This statement is important for two reasons. First, by focusing the provision on "illegal practices," it confirms other suggestions in the legislative history that Congress sought to provide a new remedy for rebates or kickbacks that already were prohibited. The only rebates or kickbacks prohibited at the time were those barred by the Copeland Act. Second, the statement refers to the practice of "exacting" rebates and kickbacks. Inherent in this term is the use of force or coercion. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 790 (1976) (exact means "to demand and force or compel"). Thus, when Congress added the "without subsequent deduction or rebate" language to the Davis-Bacon Act, it intended only to provide laborers with a civil remedy for the same forced or coerced kickbacks already made criminal by the Copeland Act.
 
 
 50
 There is nothing forced or coercive about the assessments taken to fund job targeting programs. Union laborers fund these programs voluntarily. They exist only where they have been adopted through union democratic processes. Consequently, they are beyond the reach of the Davis-Bacon Act.
 
 
 51
 The Secretary seeks support for the Board's decision in the legislative history's scattered references to voluntary wage rebates. The Secretary points out that the Senate subcommittee that investigated the labor market in 1935 noted "the difficulty of preventing workmen from consenting and acquiescing to kick-back practice." S.REP. NO. 332, pt. 3, at 3. The committee stated that, while unions normally could impose discipline on their members, "it was found that there were always men who were so pressed economically and whose families were so badly in need of support that they were willing, even anxious, to violate the rules in order to obtain employment and wages." Id. This passage has no bearing on the case at bar. That Congress sought to aid those desperate workers who acquiesced to wage rebates demanded by employers as a condition of employment does not mean that Congress sought to bar laborers from voluntarily paying a self-imposed fee to their unions to further their own interests.
 
 
 52
 The Secretary also relies on the Davis-Bacon Act's requirement that prevailing local wages must be paid without subsequent deduction or rebate "regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics." 40 U.S.C. Sec. 276a(a). But the legislative history reveals that Congress directed this language at a highly particularized practice not at issue here. The House and Senate reports on the amendment that added this language to the statute explain that it was required because "[t]he subcommittee had found several instances of the formation of partnerships between individual workmen and the letting to such partnerships of certain portions of the work under contract, the net results of which was [sic] to pay the members of the partnership less than the prevailing rate of wage." H.R.REP. NO. 1757 at 3; S.REP. NO. 1155 at 3. The reports conclude that "[t]his provision would eliminate this particular device for circumventing the law." Id. (emphasis added). A job targeting program is not such a partnership. The language cited by the Secretary is, therefore, irrelevant.[1]
 
 V.
 
 53
 Thus, the Secretary has construed the term "membership dues," 29 C.F.R. Sec. 3.5(i), to reflect a statutory policy that does not exist. Neither the Copeland Act nor the Davis-Bacon Act authorizes the result reached here. Indeed, at the most fundamental level, the Secretary's decision perverts the congressional purpose underlying these statutes. The Copeland and Davis-Bacon Acts were designed to protect the interests of laborers. See United States v. Binghamton Constr. Co., Inc., 347 U.S. 171, 177, 74 S.Ct. 438, 441, 98 L.Ed. 594 (1954) (Davis-Bacon Act was enacted "to protect ... employees from substandard earnings by fixing a floor under wages on Government projects"); Carbone, 327 U.S. at 640, 66 S.Ct. at 737 (Copeland Act was designed "to prevent workers from wrongfully being deprived of their full wages"). The Secretary has transformed these statutes into obstacles that prevent laborers from protecting their own interests.
 
 
 54
 The Secretary's position is not only unsupported, it is futile. Even in the face of the decision rendered by the majority today, unions may keep their job targeting programs. Today's decision means only that unions may not explicitly earmark the assessments taken to fund such programs. It seems likely that unions will be resourceful enough to provide for job targeting programs through perfectly legal general dues assessments. Of course, on projects to which the Davis-Bacon Act is inapplicable, union members need not go to even this much trouble to fund job targeting programs. Even the Labor Department's Wage and Hour Administrator admits that wage deductions on these projects are beyond the scope of the Department's authority. Letter from Paula V. Smith, Wage and Hour Administrator, Department of Labor, to Terry R. Yellig, Counsel for the Building and Construction Trades Department, AFL-CIO, and Gary L. Lieber, Counsel for the National Electrical Contractors Association 2 (Sept. 5, 1989), reprinted in J.A. 19.
 
 
 55
 In the end, therefore, the majority's view is troubling for what it says about the purpose of the Davis-Bacon Act, but not for its practical impact. While I would reverse the decision below, its affirmance does not mean the end of job targeting programs. It means only that the deductions required to fund them will be taken under a different label.
 
 
 56
 Respectfully, I dissent.
 
 
 
 *
 Chief Judge Edwards would grant the petition for rehearing
 
 
 [1]
 As demonstrated, the Secretary's arguments with regard to the purpose of the Davis-Bacon Act are unpersuasive. It does not matter, however, for we may not look to these arguments in deciding this case. The Board did not make the arguments asserted by the Secretary, and "[i]t is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983)