**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LEE HOTEL CORPORATION, Respondent.**

No. 92–70416.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1993.

Decided Jan. 11, 1994.

Nancy B. Hunt, N.L.R.B., Washington, DC, for petitioner.

Kenneth M. Simon, Beverly Hills, CA, for respondent.

Before: HUG, SCHROEDER, and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

On September 13, 1989 the National Labor Relations Board affirmed an Administrative Law Judge's finding that the respondent Lee Hotel Corporation violated §§ 8(a)(1) and (3) of the National Labor Relations Act by discharging four of its employees for their involvement in union activity. The employees worked as cocktail waitresses and bartenders in the hotel's bar and lounge. The Board affirmed the ALJ's Order that the Hotel reinstate the employees and awarded them backpay to make them whole for the loss of earnings and other benefits they suffered as a result of the illegal discharges.

The ALJ subsequently held a backpay hearing and, on March 25, 1992, the Board issued a Supplemental Decision and Order adopting the ALJ's backpay award with slight modifications. The Board now seeks enforcement of that Order.

The Hotel contends that, because the employees reported less tip income to the Internal Revenue Service than they reported to the Regional Director of the NLRB, the ALJ, in his backpay award, should not have awarded a greater amount of tip income than the employees reported on their income tax returns. To support its assertions, the Hotel argues that the ALJ's findings were not supported by a preponderance of the evidence and that the ALJ erred by relying on *Hacienda Hotel & Casino*, 279 N.L.R.B. 601 (1986) *enforced* 813 F.2d 1230 (9th Cir.1987), and *Original Oyster House*, 281 N.L.R.B. 1153 (1986) *enforced sub nom. N.L.R.B. v. Louton*, 822 F.2d 412 (3rd Cir.1987).

## A. *Decision of the ALJ*

At the hearing held before the ALJ, the employees testified that they received average tip amounts greater than the amount they reported on their income tax returns. The ALJ found the employees' testimony credible because, in part, it was consistent with the bar revenues for the relevant time period and with the calendar of events at the Great Western Forum and the Hollywood Racetrack, both of which are located in close proximity to the Hotel. Also, the ALJ noted that the employees adhered to their testimony even though they were aware that they could be prosecuted and penalized for failing to report their full income to the IRS. Crediting the employees' testimony, the ALJ calculated the backpay award using an amount of tip income greater than what the employees reported to the IRS.

The ALJ's decision adopted the Board's rationale from *Hacienda Hotel* and *Oyster House*, that "failure to accurately report tip income was a matter best left to the IRS. To do otherwise would 'frustrate the purpose of the [NLRA] by allowing the Respondent as wrongdoer to benefit from [the discriminatee's] failure to accurately report [their] income to the IRS.'"

On March 25, 1992, the Board affirmed the ALJ's findings and backpay computation with slight modifications.

## B. *Hacienda Hotel and Oyster House*

Respondent Hotel argues that the Board erred in affirming the ALJ's backpay award because the ALJ relied on *Hacienda Hotel & Casino*, 279 N.L.R.B. 601 (1986) *enforced*, 813 F.2d 1230 (9th Cir.1987) and *Original Oyster House*, 281 N.L.R.B. 1153 (1986) *enforced sub nom. N.L.R.B. v. Louton*, 822 F.2d 412 (3rd Cir.1987). We do not agree.

In *Hacienda Hotel*, the Board affirmed an ALJ's backpay award to an employee who was discriminatorily discharged. The award was partly based on an amount of tip income that was greater than what the employee previously reported to the IRS. In affirming the award, the Board stated that it was not condoning the employee's behavior or ignor-

ing other and equally important Congressional objectives. The Board reasoned that, because the issue of the employee's accuracy in completing her income tax returns was now a matter of public record, it was best left to the IRS which would be given a copy of the Board's decision. The Ninth Circuit enforced the Board's Order without a published opinion. *Hacienda Hotel & Casino v. N.L.R.B.*, 813 F.2d 1230 (9th Cir.1987).

In *Original Oyster House,* the ALJ based backpay awards, in part, on tip amounts that were greater than what the employees reported to the IRS. The Board affirmed the ALJ's Order citing *Hacienda Hotel.* The Board noted that it was mindful of the "considerations pertaining to the claimants' contrary income tax disclosures to the Internal Revenue Service" and, therefore, it furnished a copy of its decision to the IRS.

The Third Circuit enforced the Board's Order in *N.L.R.B. v. Louton, Inc.*, 822 F.2d 412 (3rd Cir.1987). The court rejected the company's assertion that the tip evidence presented was incredible because the employees admitted under oath that they reported different amounts on their income tax returns. It held that, when the ALJ's credibility determinations are based on an assessment of demeanor, they are to be given great deference. The court, noting that the employees maintained "the veracity of their tip information in the face of prosecution for perjury or tax evasion," found that the record as a whole showed substantial evidence to support the Board's findings.

### 1.

█ The Hotel contends that the ALJ erred in relying on *Hacienda Hotel* and *Oyster House* because they were decided by three-member panels of the Board. 29 U.S.C. § 153(b) states that the "Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise." Also, "three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum" when a case is decided by a three-member panel. The statute establishes no limits on when the Board may delegate its authority to a three-member panel. Therefore, the Board had the authority to delegate the *Hacienda Hotel* and *Oyster House* cases to three-member panels of the Board. The ALJ did not err by relying on these cases.

### 2.

█ The Hotel also contends that the ALJ and the Board should have rejected *Hacienda Hotel* and *Oyster House* because reliance on these cases results in a failure of the Board to reconcile the two federal statutes applicable in this case—the NLRA and the Internal Revenue Code. The Hotel relies on *Southern Steamship Co. v. N.L.R.B.*, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942) and *Sure–Tan v. N.L.R.B.*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) to argue that the Board has an obligation to attempt to reconcile the backpay award with the employees' failure to accurately report tip income on their income tax returns. According to the respondent, it is impossible to reconcile these two statutes if the employees receive more backpay than they reported on their tax returns. We hold that the Board fulfilled its duty to reconcile both statutes.

In *Southern Steamship,* the Board ordered elections for employees on board the petitioner's vessels. The Union objected to the presence of the company's representative at the election and therefore none was admitted by the Board. The Union won the election but the company refused to bargain with the Union arguing that the election was void because its representative was prohibited from being present at the election. As a result of the refusal to bargain, several crew members went on strike and five of these were discharged.

The Board ultimately found that the strike was caused by petitioner's unfair labor practices and ordered reinstatement of the discharged crew members. The Third Circuit enforced the order.

The Supreme Court held that the Board abused its discretion in ordering reinstatement of the crew members because the strike violated criminal laws prohibiting mutiny and the incitement of revolt on shipboard and the Board should have considered

these statutes in fashioning a remedy under the NLRA. 316 U.S. at 48, 62 S.Ct. at 895. The Supreme Court stated that the Board should not "effectuate the policies of the [NLRA] so single-mindedly that it may wholly ignore other and equally important Congressional objectives." *Id.* at 47, 62 S.Ct. at 894.

In *Sure–Tan v. N.L.R.B.,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the Chicago Leather Workers' Union was elected as the collective bargaining representative for Sure–Tan's employees. Sure–Tan's president filed objections to the election saying that six of the seven eligible voters were illegal aliens. The Board upheld the election. Sure–Tan then reported the employees to the INS. Five of them ultimately left the country to avoid deportation.

The ALJ found that Sure–Tan's actions constituted an unfair labor practice. The Board adopted the ALJ's recommendation that the company be ordered to cease and desist from various unfair labor practices.

The Board rejected the ALJ's backpay recommendation. The ALJ recommended that, since backpay is normally tolled during periods in which employees, such as these, were not available for employment, an ordinary backpay award could not be ordered. Therefore, the ALJ suggested that the Board consider awarding four weeks of backpay in order to compensate the illegally discharged employees and also to deter such violations in the future.

The Board modified the ALJ's backpay award finding that the record contained no evidence that the employees had not already returned to the United States. Thus, the Board ordered the conventional remedy of reinstatement with backpay. 467 U.S. at 889, 104 S.Ct. at 2807.

The Seventh Circuit enforced the Board's Order with modifications. The court held that, to satisfy the NLRA, some minimum backpay award should be ordered. The court noted that the discriminatees may not be lawfully available for employment in the United States before the date of the offers of reinstatement and therefore would receive no backpay. To effectuate the policies of the

NLRA, the court suggested that the Board award a flat amount of six months backpay. *NLRB v. Sure–Tan,* 672 F.2d 592, 606 (7th Cir.1982).

The Supreme Court thereafter held that the court of appeals erred by not conditioning its backpay award on the employee's availability for employment in the United States under the Immigration and Nationality Act. It held that, in fashioning its award, the Board is required to consider other equally important Congressional objectives. "By conditioning ... reinstatement on the employees' legal reentry, a potential conflict with the INA is thus avoided. Similarly, in computing backpay, the employees must be deemed 'unavailable' for work ... during any period when they were not lawfully entitled to be present and employed in the United States." 467 U.S. at 903, 104 S.Ct. at 2814. The fact that it was uncertain whether any of the discharged employees would be able to reenter the country and accept the reinstatement offers, did not justify crafting a remedy not encompassed by the NLRA. *Id.* at 904, 104 S.Ct. at 2815.

*United Brotherhood of Carpenters & Joiners v. N.L.R.B.,* 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958), *superseded by statute as stated in Carrier Air Conditioning Co. v. N.L.R.B.,* 547 F.2d 1178 (2nd Cir.1976) *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977), also sheds light on the Board's duty to consider other statutes in fashioning remedies under the NLRA. The Supreme Court held that, even though the employer was a common carrier in interstate commerce, the Board should not base its determination of whether the "hot cargo clause" at issue violated the Interstate Commerce Act. The Board should analyze the clause pursuant to the NLRA.

The Court distinguished *Southern Steamship* because, in that case, the Board's order directly weakened the effectiveness of a statutory prohibition against mutiny by crew members. According to the Court, *Southern Steamship* did not require the Board to "mechanically accept standards elaborated by another agency under a different statute for wholly different purposes." 357 U.S. at 111, 78 S.Ct. at 1022. Instead, the Board should

conduct "an independent inquiry into the requirements of its own statute." *Id.*

 These cases taken together require that, when the Board fashions a remedy under the NLRA without any consideration for the conflicting terms of another statute, *i.e.* if the Board wholly ignores equally important Congressional objectives, the courts should refuse to enforce that Order. The Board is not required, however, to mechanically accept standards elaborated by a different agency under another statute.

In this case, the ALJ and the Board factored into their decisions the employees' alleged violations of the IRC. The ALJ decided to credit the employees' testimony concerning their average tip income, noting that their testimony could subject them to criminal prosecution and penalties imposed by the IRS. The Board also explained that it planned to send a copy of its decision to the IRS to take any action it deemed appropriate. Furthermore, the Board ordered that the employees receive the appropriate amount of backpay "minus income tax withholdings required by Federal and state laws."

Thus, neither the ALJ nor the Board ignored the conflicting provisions of another statute as in *Southern Steamship* and *Sure-Tan.* The orders reconciled the two statutes in a reasonable way. Thus, we reject the Hotel's argument that the ALJ's reliance on *Hacienda Hotel* and *Oyster House* resulted in a failure to reconcile the NLRA and the IRC.

### C. *ALJ's Findings of Fact*

Finally, the Hotel argues that the Board erred in affirming the ALJ's findings regarding the amount of the employees' tip income. We disagree. The ALJ determined that the employees were testifying truthfully despite the fact that they were exposing themselves to possible criminal prosecution and penalties for failing to report their full income to the IRS. The ALJ also found that the overall bar revenues and the schedule of events at the Forum supported the employees' testimony.

The ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable. *N.L.R.B. v. Don Burgess Constrs. Corp.,* 596 F.2d 378, 383 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). Therefore, we hold that the ALJ's findings were supported by a preponderance of the relevant evidence and that the Board did not err by affirming them. We enforce the Board's Order.