**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**Beverage Dispensers' Union, Local 165, Hotel Employees & Restaurant Employees International Union, AFL–CIO, Petitioner–Intervenor,**

v.

**UNBELIEVABLE, INC., d/b/a Frontier Hotel & Casino, Respondent.**

No. 93–70236.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted January 9, 1995.

Memorandum Filed Sept. 6, 1995.

Order and Opinion Filed Dec. 1, 1995.

Frederick C. Havard, National Labor Relations Board, Washington, DC, for the petitioner.

Barry S. Jellison, Michael T. Anderson, Davis, Cowell & Bowe, San Francisco, California, for intervenor Beverage Dispensers' Union, Local 165, Hotel & Restaurant Employees International Union, AFL–CIO.

James J. Meyers, Jr., Meyers, Merrill, Schultz & Wolds, San Francisco, California; Michael A. Taylor, Ogletree, Deakins, Nash, Smoak & Stewart, Washington, DC, for respondent Unbelievable, Inc.

Before: GOODWIN and SCHROEDER, Circuit Judges, and TASHIMA, District Judge.*

## ORDER

The Memorandum disposition filed September 6, 1995, is amended as follows:

[Editor's Note: Amendments incorporated for purposes of publication].

The request for publication is granted and the Memorandum disposition, filed September 6, 1995, as amended, is redesignated as an authored Opinion by Judge Tashima.

## OPINION

TASHIMA, District Judge:

The National Labor Relations Board ("Board") petitions for enforcement of its order finding that respondent Unbelievable, Inc. d/b/a Frontier Hotel & Casino ("Frontier") violated § 8(a)(1) and (a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (5), by conducting surveillance on and ejecting Union representatives, unilaterally imposing new rules on employee conduct and unilaterally ceasing to pay pension fund contributions. We have jurisdiction under 29 U.S.C. § 160(e) and we grant the petition to enforce.

## FACTUAL AND PROCEDURAL BACKGROUND

Frontier owns a hotel in Las Vegas, where the disputed events occurred. The hotel's previous owner entered into a collective bargaining agreement ("CBA") with the Local Joint Executive Board of Las Vegas, Culinary Workers Union Local 226, and Bartenders Union, Local 165, affiliated with Hotel Employees and Restaurant Employees International Union, AFL–CIO (the "Union"). Frontier acquired the hotel in July, 1988, adopted the CBA, and honored it through its expiration in June, 1989, and thereafter. On February 26, 1990, bargaining between Frontier and the Union to reach a new CBA reached an impasse, when Frontier implemented its "Last, Best and Final Proposal" (the "Final Offer") to the Union.

After the CBA expired, Frontier engaged in certain activities which were alleged to have violated the NLRA, including eavesdropping and conducting private surveillance on employees, ejecting Union representatives, unilaterally issuing new rules and ceasing to pay pension fund contributions.

The Union filed charges with the Board on November 16, 1989, July 17, 1990, October 4, 1990, and October 23, 1990. The Regional Director of the Board subsequently filed complaints against Frontier, which were tried before an Administrative Law Judge (the "ALJ"). The ALJ found that Frontier had engaged in the alleged unfair labor practices and issued an order for Frontier to cease and desist from such activities. Frontier filed exceptions to that decision. A three-member panel of the Board affirmed the ALJ's decision in a Decision and Order issued on December 7, 1992. 309 NLRB No. 120. Pursuant to 29 U.S.C. § 160(e), the Board petitioned this court for enforcement of its order. The Union intervened on appeal on behalf of the Board. Both the Board and the Union also seek sanctions on appeal.

Frontier, represented by its counsel Joel I. Keiler ("Keiler"), filed both an opening and reply brief, challenging all of the Board's rulings. In addition, Frontier argued that the ALJ should have recused himself for bias against both Frontier and this court. Subsequently, Frontier obtained new counsel, Ogletree, Deakins, Nash, Smoak & Stewart, and Meyers, Merrill, Schultz & Wolds, who moved for leave to file a supplemental brief, and to strike references to the motion to disqualify the ALJ. A motions panel denied the request to file a supplemental brief, and referred the motion to strike to this panel for resolution.

For the reasons given below, we affirm the Board's order in all respects, deny Frontier's

---

* Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

motion to strike, and impose sanctions against Frontier and its former counsel, Keiler.

## DISCUSSION

### Standard of Review

■■■ We will uphold decisions of the Board if its findings of fact are supported by substantial evidence and if it correctly applied the law. *NLRB v. General Truck Drivers, Local No. 315,* 20 F.3d 1017 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *NLRB v. O'Neill,* 965 F.2d 1522, 1526 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993). " 'The substantial evidence test is essentially a case-by-case analysis requiring review of the whole record.' " *General Truck Drivers,* 20 F.3d at 1021 (quoting *Turcios v. INS,* 821 F.2d 1396, 1398 (9th Cir.1987)). We will defer to the Board's interpretation of the NLRA if it is reasonably defensible. *General Truck Drivers,* 20 F.3d at 1017.

### Surveillance and Ejection of Union Representatives

The first issue raised is whether Frontier's ejection of Union representatives was lawful.

■■■ The Board accepted the ALJ's finding that Frontier engaged in unfair labor practices by eavesdropping on private conversations between employees and Union representative Roxanna Tynan ("Tynan") in violation of § 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1). Our review of the record finds substantial factual support for these findings. On October 20, 1989, Frontier security chief Michael Kluge ("Kluge") eavesdropped on a conversation between Tynan and an employee in the employee break room, an area Union representatives were authorized to visit under the CBA. Kluge shortly thereafter expelled Tynan from the hotel premises on the basis of what he heard of the conversation.

We do not accept Frontier's paradoxically self-incriminating argument that the issue of surveillance is barred by the NLRA's six-month statute of limitations, § 10(b), 29 U.S.C. § 160(b), because it had engaged in surveillance of Tynan as early as February, 1989, more than six months prior to the filing of the charge of unlawful surveillance on November 16, 1989. Although the surveillance began more than six months before the charge was filed, the record is clear that the surveillance continued up to October 20, 1989, less than a month before filing of the charge. Frontier's statute of limitations argument is frivolous.

■■■ The Board also upheld the ALJ's finding that Frontier's ejection of Union representatives constituted an unfair labor practice by violating the employees' contractually granted access to their bargaining representatives, in violation of § 8(a)(1) and (a)(5) of the NLRA, 29 U.S.C. § 158(a)(5) and (a)(1). We agree.

■■■ Article 4 of the expired CBA provided access to Union representative "to see that this Agreement is being enforced." A contractual provision for Union access, such as Article 4, is a term and condition of employment that survives the expiration of the contract. *See, Facet Enters., Inc. v. NLRB,* 907 F.2d 963, 983 (10th Cir.1990); *NLRB v. Great Western Coca–Cola Bottling Co.,* 740 F.2d 398, 403–404 (5th Cir.1984). Providing Union representatives access to the employer's premises constitutes a mandatory subject of bargaining which requires notice to the Union and an opportunity to bargain prior to any change. *Facet Enters.,* 907 F.2d at 983. The findings that the Union representatives were operating within the terms of the CBA when they visited the hotel are supported by substantial evidence. Thus, their expulsion constituted a unilateral change of the CBA.

Extensive testimony supports the ALJ's finding that Frontier expelled Union representatives on either the flimsiest of grounds or no grounds at all. Among the evidence on which the ALJ relied was the ejection of Union representative Tynan, discussed above, after Frontier unlawfully eavesdropped on her conversation with an employee. On November 22, 1989, Frontier's personnel director ejected Union representative Michelle Viela, on the sole ground that Frontier was "just taking a hard stand." On

October 22, 1990, Union representative Hattie Canty ("Canty") was ejected for "harassing" two non-union employees. Frontier based its decision to expel Canty on reports from the employees that she had asked them if they were happy with certain benefits. We agree with the ALJ that these reports were unremarkable, and not a proper basis for ejection of Union representatives.

■ In addition to the contractual violation, the ALJ found that the ejection of representatives interfered with union-related communications in violation of § 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1). *See Harvey's Wagon Wheel, Inc.*, 236 N.L.R.B. 1670, 1978 WL 7669 (1978). This constitutes an additional, independent rationale for the Board's findings and renders all of Frontier's arguments futile. We conclude that in regard to surveillance and ejection of Union representatives, the Board's decision was supported by substantial evidence, and that it correctly applied the law.

*Promulgation of New Rules*

■ On July 1, 1990, the Hotel issued a new set of 63 rules and regulations to employees without notifying the Union or providing it with an opportunity to bargain over them. The Board agreed with the ALJ that Frontier unilaterally promulgated new disciplinary rules in violation of § 8(a)(5) and (1) of the NLRA, 29 U.S.C. § 158(a)(5) and (1). A unilateral change in work rules constitutes a breach of the bargaining obligation, even after the CBA has expired. *See, Alfred M. Lewis, Inc. v. NLRB*, 587 F.2d 403, 408 (9th Cir.1978); *NLRB v. Miller Brewing Co.*, 408 F.2d 12, 14 (9th Cir.1969).

In its briefs, Frontier took issue with the ALJ's findings, arguing in particular that five of the new rules did not involve "a material, a substantial, and a significant" change. *Peerless Food Products*, 236 N.L.R.B. 161, 1978 WL 7691 (1978). At oral argument, Frontier's new counsel conceded significant differences in three of the new rules, and argued only that new rules 40 and 42 did not represent substantial changes. We find no merit in Frontier's argument as to these two rules.

New rule 40 requires employees suspected of being under the influence of drugs or alcohol to undergo a medical examination or be terminated immediately. The old rules said nothing about a medical examination. They merely prohibited employees from reporting to work under the influence of liquor, narcotics or drugs. We find it incredible that Frontier would argue that the added requirement that employees subject themselves to medical examination on threat of termination is only an insubstantial change in the rules. The argument is frivolous.

In its opening brief, Frontier argues that new Rule 42 is merely a restatement of contract article 6.01(b). Frontier's argument is inaccurate and appears purposely designed to mislead the court. New Rule 42 prohibits the unauthorized posting, distributing or circulating or any written materials in the working area. Contract article 6.01(b) pertains to drug and alcohol abuse. The two provisions have nothing to do with one another.

Frontier's arguments are meritless. The Board's finding that Frontier unilaterally promulgated new disciplinary rules in violation of § 8(a)(5) and (1) of the NLRA, 29 U.S.C. § 158(a)(5) and (1), is supported by substantial evidence and is affirmed.

*Pension Contributions*

Under Article 27 of the expired CBA, Frontier was required to make contributions to an employee pension fund. During negotiations over a new agreement, Article 27 was never an issue. Frontier's Final Offer presented on February 5, 1990, by its then attorney Kevin Efroymson ("Efroymson"), explicitly provided that there shall be "no change" from Article 27. A subsequent implementation letter sent by Efroymson following impasse contained no references to changes in Article 27.

On May 10, 1990, Keiler sent a letter to the Union notifying it that the pension plan was being discontinued as of June 2. On May 24, 1990, the Union responded in a letter explaining that it had not been advised that Keiler represented Frontier, and that the Union would respond to his letter if it received such notification. Keiler did not respond to that letter. Frontier terminated

pension contributions in June. The Board and the ALJ found that Frontier violated § 8(a)(5) and (1) of the NLRA, 29 U.S.C. § 158(a)(5) and (1), by unilaterally discontinuing its contributions to the pension fund.

Frontier argues incorrectly that it had to stop payments to the pension trust once the CBA expired and negotiations stopped upon impasse, pursuant to § 302 of the Labor–Management Relations Act, 29 U.S.C. § 186(c)(5), which requires a written agreement with the employer, before the employer can make any contribution to an employee trust fund. An employer has a duty to refrain from unilaterally changing the terms of employment without first bargaining. *Carter v. CMTA–Molders & Allied Health & Welfare Trust,* 736 F.2d 1310, 1313 (9th Cir.1984). Frontier's continuing contributions to the pension fund after the CBA expired were not only legal, they were required.

*Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), upon which Frontier relies, does not compel us to hold otherwise. In *Moglia,* the court held that contributions to the pension trust were illegal because no CBA had ever been signed. *Id.* at 116. However, this circuit has consistently refused to apply *Moglia* in cases such as the instant one, where a CBA was signed but has expired.[1] *See, e.g., Carter,* 736 F.2d at 1313; *Peerless Roofing Co. v. NLRB,* 641 F.2d 734, 736 n. 2 (9th Cir.1981). In the case at bench, a prior CBA had been honored by Frontier and, though the CBA expired, the parties never engaged in bargaining regarding pension benefits.

We agree with the Board's finding that Frontier terminated pension fund contributions without giving the Union prior notice or an opportunity to bargain. Frontier argues that it did not have to give notice to the Union, however, because impasse had been reached. After an impasse, an employer may unilaterally impose changes in terms and conditions of employment, only if those

changes were reasonably comprehended in the employer's previous proposals to the union. *Southwest Forest Indus., Inc. v. NLRB,* 841 F.2d 270, 273 (9th Cir.1988); *Peerless Roofing,* 641 F.2d at 735. However, no impasse was reached over Article 27, because it was never raised as an issue during bargaining. During the negotiations leading up to the February 1990 impasse, Frontier never indicated that it proposed changes in the Pensions Article.

Frontier presented no evidence whatsoever that changes in the Pension Plan were reasonably comprehended in its proposals before impasse. To the contrary, substantial evidence supports the finding that changes to the Pension Plan were not reasonably comprehended in Frontier's previous proposals—indeed, were not comprehended at all. Frontier's Final Offer explicitly provided that there shall be no change from Article 27 of the CBA. The subsequent implementation letter sent by Efroymson after impasse contained no reference to changes in Article 27. Efroymson himself testified that if an article was not being changed, it was not included in the implementation letter. Thus, Frontier's decision to end pension fund contributions could not have been contemplated from its previous proposals, and Frontier was not free unilaterally to end the payment of pension benefits. *Id.*

As a last resort, Frontier argues that the Union waived its right to bargain over the proposed change through inaction. We give "substantial deference" to the Board when it "defines the scope of the duty to bargain by defining part of the process that collective bargaining must follow." *Stone Boat Yard v. NLRB,* 715 F.2d 441, 444 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984).

To establish waiver of the right to bargain by union inaction, the employer must first show that the union had "clear notice of the employer's intent to institute the change sufficiently in advance of actual implementation so as to allow a reasonable

---

1. At least one decision of this court has distinguished *Moglia* as a private dispute that did not involve collective bargaining issues or national labor policy. *Peerless Roofing Co., Ltd. v. NLRB,* 641 F.2d 734, 736 n. 2 (9th Cir.1981).

opportunity to bargain about the change." *American Distrib. Co. v. NLRB,* 715 F.2d 446, 450 (9th Cir.1983) (citations omitted), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). In addition, the employer must show that "the union failed to make a timely bargaining request before the change was implemented." *Id.* (citations omitted). The waiver of a protected right must be clear and unmistakable. *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). Here, Frontier bore the burden of proving that the Union clearly and unmistakably waived its right to bargain over the proposed pension plan change. Frontier cannot argue credibly that it has met this burden.

Frontier's entire argument rests on unsupported testimony by Keiler that Frontier had informed the Union prior to his May 10 letter that he was representing Frontier. Under Frontier's theory, because the Union must have known Keiler was representing Frontier, the Union's May 24 letter requesting confirmation of his status as Frontier's counsel was merely an obstructionist tactic. Frontier argues that because the Union did not request bargaining right then, it forever waived its right to bargain on the pension issue.

However, as the Board noted, Keiler testified that he was not present when Frontier's owners allegedly told the Union of Keiler's representation and he did not know how it happened. The ALJ and the Board rejected Keiler's unsupported testimony, and we find no reason to question their decision. In its May 24 letter the Union said it would respond to Keiler's letter if it received confirmation that he represented Frontier. Thus, the Union indicated a willingness to discuss the issue of the pension. Keiler never responded to this request.

On these facts, it is incredible for Frontier to argue that it established a clear and unmistakable waiver by the Union. The Board's findings are supported by substantial evidence and are affirmed.

*Motion to Strike References to Bias of ALJ*

In its opening and reply briefs, filed by Keiler, Frontier argued that the ALJ should have recused himself for bias against Frontier and the Ninth Circuit. Subsequently, Frontier's new counsel requested leave of the Court to withdraw the motion to disqualify the ALJ and to strike all references to that motion.

We deny Frontier's motion to strike. While we find absolutely no substance to Frontier's claims of bias on the part of the ALJ, we agree with the Board and the Union that Frontier's motion to strike is a last ditch effort to sanitize the record. Frontier's motion to strike underlines the frivolous nature of its original allegations of bias, which, as discussed below, form one of the bases for sanctions against Frontier and Keiler.

*Rule 38 Sanctions*

 Both the Board and the Union request sanctions against Frontier in the form of attorneys' fees and double costs. Where this court determines that an appeal is frivolous, it may, in its discretion, award the prevailing party damages for delay and double costs. Fed.R.App.P. 38; 28 U.S.C. § 1912. An appeal is frivolous when the results are obvious or the arguments are wholly without merit. *NLRB v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982) (citations omitted). A union-intervenor may recover attorneys' fees and double costs under Rule 38. *See, NLRB v. Limestone Apparel Corp.,* 705 F.2d 799, 800 (6th Cir.1982).

This entire appeal was frivolous. As discussed above, substantial evidence existed on the record to support the Board's holding that Frontier engaged in the charged unfair labor practices. Indeed, the evidence is overwhelming. Further, the legal arguments advanced and the legal authority cited are largely inapposite.

 Accordingly, we conclude that both the Board and the Union are entitled to attorneys' fees and double costs. Frontier and its original counsel on appeal, Keiler, are jointly and severally liable. *First Investors Corp. v. American Capital Fin. Servs., Inc.,* 823 F.2d 307, 310 (9th Cir.1987). We decline to impose sanctions of Frontier's new counsel, who were substituted as counsel after Frontier's reply brief was filed. Although

Frontier's new counsel petitioned for leave to file a supplemental brief, we do not find that their request was frivolous. Indeed, they attempted to improve the original briefs filed by Keiler by withdrawing one of Frontier's frivolous arguments—its efforts to disqualify the ALJ. *See, Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1417 (9th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991).

The amount of the award for attorneys' fees and double costs incurred on appeal shall be established by a supplemental order upon submissions by the Board, the Union and Frontier, in accordance with Fed. R.App.P. 39(d) and Ninth Circuit Rule 39–1.

The Board's petition to enforce its order is granted. The Board and the Union are granted 28 days from the date of the filing of this memorandum in which to file with the clerk their statements of costs and attorney fees in this court. Frontier and Keiler are granted 14 days in which to file any objection. Thereafter this panel will enter a judgment for attorneys' fees and double costs.

**ORDER ENFORCED WITH SANCTIONS.**