**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Local 48, AFL–CIO, Respondent.**

**No. 01–71769.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2003.

Filed Sept. 16, 2003.

---

Steven B. Goldstein, Esq., Washington, DC, for the petitioner.

Norman D. Malbin, Esq., Portland, OR, for the respondent.

Gary Lieber, Esq., Washington, DC, for amicus National Electrical Contractors Assoc.

Before: BRUNETTI, T.G. NELSON, and RAWLINSON, Circuit Judges.

BRUNETTI, Circuit Judge.

The National Labor Relations Board ("NLRB" or "Board") requests that we enforce its December 15, 2000 order arising from a claim that the respondent International Brotherhood of Electrical Workers, Local 48, AFL–CIO ("Local 48" or "union") violated portions of the National Labor Relations Act ("NLRA" or "Act") by forcing its member Patrick Mulcahy to pay Market Recovery Program ("MRP") funds when he worked on Davis–Bacon Act projects. The Davis–Bacon Act was designed for the benefit of construction workers on government projects, and requires contractors on federally funded construction projects to pay prevailing area wage rates "unconditionally . . . and without subsequent deduction or rebate . . . regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics." 40 U.S.C. § 276a(a) (West 2001). Local 48 opposes enforcement of the order, claiming that the NLRB's order was not supported by substantial evidence, that the NLRB failed to examine the issues under the NLRA, and that MRP dues do not violate the Davis–Bacon Act. We have jurisdiction pursuant to 29 U.S.C. § 160(e), and will enforce the NLRB's order.

### I.

Local 48 has a bargaining relationship with the Oregon–Columbia chapter of the National Electrical Contractors Association ("ONECA"). ONECA is comprised of many electrical company members, who often assign their bargaining rights to ONECA. In 1986, Local 48 organized the MRP to help union members recover some of the business previously lost to lower wage nonunion contractors. The MRP created a fund that was used to subsidize union employees' wages so that

union contractors could bid competitively on projects. The MRP pool was created solely through the funds paid by employees who worked under the Local 48–ONE-CA agreement. The union contractor could submit a competitive bid for jobs—i.e., project a lower hourly wage for employees—but still pay union employees the prevailing rate through monies provided from the MRP fund. For example, with the prior approval of Local 48, the union contractor could bid $20 an hour for employees, but meet the union employees' actual rate of $25 an hour by receiving $5 an hour from the MRP pool. Local 48 collected MRP dues though voluntary checkoff (direct deductions from employees' paychecks), direct payment to the union, or transfers from the employees' credit union accounts. However, by 1995, Local 48 had abandoned its dues-checkoff authorization, particularly on Davis–Bacon jobs. If an employee had failed to make the MRP payments, the union would inform that employee of the arrears in writing, including a notice that failure to pay would result in a discharge request to the employee's current employer.

Patrick Mulcahy, the charging party, was a member of Local 48. On June 21, 1995, Mulcahy began working for Kingston Constructors on a Davis–Bacon job. Previously, Mulcahy had worked for Excalibur Electric on a non-Davis-Bacon job. Although Mulcahy had requested that Excalibur directly debit from his paycheck MRP dues owed to Local 48, Excalibur refused to do so. While he was working at Kingston, Local 48 sent a letter requesting that Mulcahy pay the MRP fees owed from his job with Excalibur. Mulcahy did not respond to Local 48's request, so Local 48, as it had threatened in the letter to Mulcahy, requested that Kingston fire Mulcahy. On or about July 18, 1995, Kingston did, in fact, fire Mulcahy. However, Mulcahy paid the arrears to Local 48 and was reinstated at Kingston without losing any pay.

In June 1995, Mulcahy briefly worked for Blessing Electric on a Davis–Bacon job. He did not pay MRP dues while employed with Blessing. In October 1995, Mulcahy was employed with L.K. Comstock on a Davis–Bacon job. While Mulcahy worked at L.K. Comstock, Local 48 requested in a letter that he pay the MRP fees from the Blessing employment. The letter included a warning that if Mulcahy failed to pay the Blessing MRP fees, Local 48 would seek his discharge from L.K. Comstock. Mulcahy paid the amount before Local 48 attempted to have him fired.

On January 12, 1996, Mulcahy filed a charge with the NLRB claiming that Local 48 had violated the NLRA. In his complaint dated February 13, 1997, Mulcahy asserted that Local 48 had violated §§ 8(b)(1)(A) and 8(b)(2) of the Act by requesting and securing Mulcahy's termination from Kingston. Mulcahy claimed his termination was for reasons other than "failure to pay periodic dues and fees as allowed under the National Labor Relations Act." Mulcahy's complaint also alleged violations for his threatened termination from L.K. Comstock in October 1995. The complaint alleged that Local 48 had threatened other unknown employees with termination under similar circumstances. On February 25, 1997, Local 48 responded to Mulcahy's complaint and requested dismissal.

An Administrative Law Judge heard the case and, on March 19, 1998, issued his decision, dismissing all claims. The judge dismissed the claim related to payment of MRP dues on Davis–Bacon jobs for lack of jurisdiction. He heard the claims that involved Local 48's attempt to collect MRP dues from the non-Davis-Bacon job at Excalibur, related to Mulcahy's termination while at Kingston. The ALJ determined

that *Detroit Mailers Union No. 40,* 192 N.L.R.B. 951 (1971) had implicitly over-ruled the earlier decided *Teamsters Local No. 959,* 167 N.L.R.B. 1042 (1967). *Detroit Mailers* allows collection of special-purpose dues under the union-security clause if they are periodic, uniformly re-quired, and not "otherwise inimical to pub-lic policy." *Detroit Mailers,* 192 N.L.R.B. at 952. The ALJ found that the MRP dues requested from Mulcahy when he worked on the non-Davis-Bacon job at Ex-calibur were periodic, uniformly-required, and not inimical to public policy. The judge held that Local 48 did not violate § 8(b)(2) or § 8(b)(1)(A) when it requested Kingston fire Mulcahy in July 1995 for failure to pay MRP dues on the non-Davis-Bacon job at Excalibur. The ALJ dis-missed the complaint in its entirety.

The General Counsel filed exceptions to the ALJ's decision. After hearing the case, the NLRB issued its decision and order on December 15, 2000. *See Int'l Brotherhood of Elec. Workers, Local 48, AFL–CIO (Kingston Constr., Inc.) and Patrick Mulcahy,* 332 N.L.R.B. No. 161, 2000 WL 1920355 (2000) (hereinafter *King-ston* ). The NLRB held that it did have jurisdiction to decide the Davis–Bacon Act cases because the contractors in question had a collective bargaining agreement with ONECA. Because one of the contractors in question (Tice Electric) met the Board standards for the exercise of discretionary jurisdiction, the Board could assert juris-diction over any of the contractors who assigned bargaining rights to ONECA, if the case had more than a de minimis effect on interstate commerce. *Kingston,* 2000 WL 1920355, at *9. Since the jurisdictional standards were met, the NLRB further found that the MRP dues for Davis–Bacon projects were "inimical to public policy" under the standard in *Detroit Mailers. Id.* at *14. The NLRB, determined that Local 48 violated § 8(b)(1)(A) when it threatened to have employees discharged

for failure to pay MRPs on Davis–Bacon jobs. *Id.* Particularly, Local 48 violated the NLRA when it threatened Mulcahy with termination from L.K. Comstock for failure to pay dues from Blessing, a Davis–Bacon job, and when it made similar threats to an unnamed class of employees. *Id.* However, the Board held that Local 48 did not violate § 8(b)(2), which prohibits a labor organization from causing an em-ployer to discriminate against an employee for reasons other than failure to pay peri-odic dues. *Id.* at *15; 29 U.S.C.A. § 158(b)(2) (West 1998). Since Mulcahy was only threatened with termination from L.K. Comstock, Local 48 did not violate § 158(b)(2) because the union did not seek his termination. *Kingston,* 2000 WL 1920355, at *15.

On November 13, 2001, the NLRB sought enforcement of its order from us. The essence of the NLRB's holding is that, within the meaning of the NLRA, MRP dues are "inimical to public policy" if they are collected for employment on Davis–Bacon jobs, regardless of whether or not the worker from whom payment is sought is employed on a Davis–Bacon job at the time of the attempted collection. The NLRB found no violations of the NLRA when MRP dues are collected on non-Davis-Bacon Act projects, even if the em-ployee is employed on another Davis–Ba-con Act project at the time the union attempts collection. *See Id.* at *8. Local 48 opposes enforcement of the NLRB's order. For the reasons set forth below, we will enforce the NLRB's order.

**II.**

 We will uphold decisions of the NLRB "if its findings of fact are supported by substantial evidence and if it correctly applied the law." *National Labor Rela-tions Board v. Unbelievable, Inc.,* 71 F.3d 1434, 1438 (9th Cir.1995). " 'Substantial

evidence' is 'more than a mere scintilla, but less than a preponderance.'" *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (quoting *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997)). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* On questions of law, we will uphold the NLRB's decisions related to the NLRA as long as they are reasonably defensible. *Id.* If the law decision relates to an area outside the NLRB's "special expertise," then we will review de novo. *American Pacific Concrete Pipe Co. v. National Labor Relations Board,* 788 F.2d 586, 590 (9th Cir.1986).

Section 29 U.S.C. § 158(b)(1)(A) prohibits labor organizations from restraining or coercing employees from exercising the rights guaranteed under § 157 of the NLRA. 29 U.S.C.A. § 158(b)(1)(A) (West 1998). Section 29 U.S.C. § 158(a)(3) prohibits employers from discriminating in hiring or termination based on whether or not the employee participates in labor organizations. 29 U.S.C.A. § 158(a)(3) (West 1998). However, termination for failure to pay "periodic dues and the initiation fees uniformly required" is permissible and does not violate the NLRA. *Id.*

■ The Davis–Bacon Act requires that workers on certain government projects receive the prevailing wage "without subsequent deduction or rebate." 40 U.S.C.A. § 276a(a)(West 2001). The purpose of the Davis–Bacon Act is to protect workers from receiving substandard wages on government jobs, regardless of any agreement the workers may have made with their employers. *Brock,* 68 F.3d at 1199(citations omitted). One of the underlying policies of the Davis–Bacon Act is to prevent employees' wages, earned on public projects, from reverting back to contractors. *Building and Construction Trades Dept. v. Reich,* 40 F.3d 1275, 1281 (D.C.Cir. 1994).

Local 48 opposes enforcement of the NLRB's order, claiming the decision was not supported by substantial evidence; that the NLRB erred in not considering evidence regarding whether or not the employees received prevailing wages after the MRP deductions; and that the NLRB's order is unreasonable. We must determine whether the NLRB appropriately applied the definition of periodic dues set forth in *Detroit Mailers No. 40,* 192 N.L.R.B. 951 (1971); whether the Board erred in its reliance on *Reich* and *Brock* to conclude the Davis–Bacon Act was violated; and whether the NLRB properly determined NLRA policy under *NLRB v. Lee Hotel Corp.,* 13 F.3d 1347 (9th Cir. 1994).

**A.**

■ In the *Kingston* decision, the NLRB reconciled its two conflicting cases—*Detroit Mailers* and *Teamsters Local 959.* See *Kingston,* 2000 WL 1920355, at *5–6. In *Teamsters Local 959,* the NLRB defined "periodic dues" as "regular payments imposed for the benefits to be derived from membership [in a union] to be made at fixed intervals for the maintenance of the organization." *Teamsters Local 959,* 167 N.L.R.B. at 1045. "Special purpose" dues not for the maintenance of the organization are not periodic under the NLRA within the *Teamsters Local 959* definition. *Id.* In *Kingston,* the NLRB clarified that, under the NLRA, "periodic dues" was defined in its later case, *Detroit Mailers,* which implicitly overruled *Teamsters Local 959. Kingston,* 2000 WL 1920355, at *6. In *Detroit Mailers,* the NLRB confirmed that employees who work under a union-security agreement must pay all "periodic dues" that are uniformly required. *Detroit Mailers,* 192 N.L.R.B. at 951–52. Failure to do so could result in loss of union membership, and, without violating the NLRA, loss of

employment. *Id.* at 952. Periodic dues must be uniform, periodic, and not "inimical to public policy." *Id.* Holding that the *Detroit Mailers* definition of "periodic dues" is more consistent with the underlying policies of § 8 of the NLRA, the NLRB used this definition to decide *Kingston*. *Kingston*, 2000 WL 1920355, at *6. The NLRB's conclusion that the *Detroit Mailers* case stated the appropriate definition of periodic dues is "reasonably defensible" and, therefore, we will apply the *Detroit Mailers* definition of periodic dues.

In its decision, since both parties conceded that the MRP fees were uniform and periodic, the NLRB only needed to determine whether the MRP fees were inimical to public policy. The NLRB determined that requiring MRP dues on Davis–Bacon Act jobs was, in fact, inimical to public policy. Local 48 claims that the NLRB lacked substantial evidence for its decision, improperly deferred to the Department of Labor regarding the Davis–Bacon Act, and unreasonably applied the law. To determine whether or not the MRP dues are inimical to public policy, we must first look at the law the NLRB relied upon in *Kingston* and, then, determine if the NLRB applied the correct standard under *Lee Hotel.*

### B.

The NLRB analyzed both the *Brock* and *Reich* cases to reach its decision that MRP dues are inimical to public policy. In *Brock*, workers ceased paying a Job Targeting Program ("JTP") assessment to their union because they believed, based on a decision by the Department of Labor's Wage and Hour Division, that the assessments violated the Davis–Bacon Act. *Brock*, 68 F.3d at 1196. We held that the JTP assessments were "subsequent deductions or rebates" prohibited by the Davis–Bacon Act and were not "membership dues" within the meaning of 29 CFR 3.5(i), the Department of Labor's implementing

regulation for the Act. *Id.* at 1200, 1202–03. The union's two percent wage reduction for the JTPs in *Brock* expressly violated the express purposes of the Davis–Bacon Act, namely to prevent prevailing wages from being returned to contractors and "to prohibit the use of deductions from employees' wages to profit or benefit contractors." *Id.* at 1200 (quoting Letter of Administrator at 5 (Sept. 5, 1989)). Additionally, the result of JTP assessments, whether directly deducted from the employees' paychecks or paid to the union, has the likely effect of skewing prevailing wages in the relevant area. *Id.* at 1201. In *Brock*, the union failed to deny that the workers received less than a prevailing wage; therefore, the issue of whether the post-reduction wage was less than "prevailing" was not addressed. *Brock*, 68 F.3d at 1201. We did, however, note that the union's argument that the pre-deduction rate of pay, even if prevailing, did not satisfy the requirements of the Davis–Bacon Act because it ignored the language prohibiting "subsequent deductions or rebates." *Id.*

*Reich* involved an appeal from a trade organization's request that the Administrator of Labor's Wage and Hour Division determine the legality of JTPs. *Reich*, 40 F.3d at 1277. The D.C. Circuit considered the district court's affirmance of the Wage Appeals Board's decision that JTP deductions violated the Davis–Bacon Act and were not allowed under the labor regulations because they benefit employers. *Id.* at 1278. The court held that the JTP deductions had the effect of artificially increasing the "prevailing local rate wage," which was based on the pre-deduction pay. *Id.* at 1280. The *Reich* court found that, because of the JTP assessments, "[t]he union employees then suffer a reduction in their wages (potentially, though not always, below the prevailing wages) through deductions precluded by the language of

the [Davis–Bacon] Act." *Id.* The court noted that deductions were "precluded by the language of the Act" and reduced employees' wages, although not necessarily below prevailing wages. *Id.* Finally, the D.C. Circuit specifically addressed whether JTP assessments were within the meaning of "periodic dues" under the NLRA and concluded that *Detroit Mailers* did not dictate that JTP dues would qualify as "periodic dues." *Id.* at 1281–82.

In *Kingston,* the NLRB addressed two questions regarding the legality of MRP dues under the Davis–Bacon Act: 1) whether MRP dues are membership dues within the meaning of the NLRA and 2) whether MRP dues, paid directly to the union, should be considered deductions or rebates within the meaning of the Davis–Bacon Act. *Kingston,* 2000 WL 1920355, at *11. The NLRB agreed with the *Reich* rationale that JTP deductions, and therefore MRP dues, required from workers on Davis–Bacon jobs were inconsistent with the purpose of the Davis–Bacon Act. *Id.* at *12. These types of deductions artificially inflate the local prevailing wage and violate "the Davis–Bacon principle that wages should not revert to contractors." *Id.* Based on *Brock,* the NLRB concluded MRP dues, like JTP assessments, whether directly deducted or paid to the union, violate the Davis–Bacon Act because employees' pay should not benefit employers. *Id.* at *13. The NLRB concluded that, while it relied on the Department of Labor's interpretations of the Davis–Bacon Act, it was "not relying on any construction of 'periodic dues' under Section 8(a)(3) that is inconsistent with ours." *Id.* at *14. The NLRB then applied *Detroit Mailers* to its conclusions from *Reich* and *Brock* and held that collection of MRPs on Davis–Bacon jobs was inimical to public policy, and Local 48 had, therefore, violated § 8(b)(1)(A). *Id.*

■ Local 48 argues that the NLRB misinterpreted the *Brock* and *Reich* holdings. Local 48 claims that the NLRB failed to determine whether Mulcahy and other workers received less than the prevailing wage after the deductions were taken. According to Local 48, because there is no evidence in the record that the workers received less than prevailing wage after the MRP deductions, the NLRB's decision is not supported by substantial evidence.

Review of the cases upon which the NLRB relies shows that the law was correctly interpreted and applied. In *Brock,* we did not address whether the Davis–Bacon Act would be violated had the union claimed that the workers received prevailing wages after the JTP deductions. *Brock,* 68 F.3d at 1201. In *Reich,* the court suggested that any deductions on Davis–Bacon jobs would violate one of the purposes of the Davis–Bacon Act: to prevent workers' wages from reverting to employers. *Reich,* 40 F.3d at 1280–81. The court focused on whether deductions violate the Davis–Bacon Act, and did not limit the conclusion on whether the employees received prevailing wages after the JTPs were paid. *Id.* Therefore, it is not necessary for the NLRB to have heard evidence regarding whether or not Mulcahy and the other workers received prevailing wages after the deductions were taken. The NLRB held that the "forced extraction" of payments for job targeting programs are "inimical to public policy," so fail to satisfy the NLRA's definition of periodic dues, because the MRPs violate Davis–Bacon by inflating the prevailing wage and benefitting employers. *Kingston,* 332 N.L.R.B. at *14.

■ Local 48 also claims that the Board's decision lacked substantial evidence. We disagree. MRP dues are virtually identical to the JTP assessments at

issue in *Brock* and *Reich.* Based on a correct interpretation of the circuit courts' and Labor Department's findings, the NLRB in *Kingston* determined why such deductions violated the Davis–Bacon Act: because MRPs return "a portion of employees' wages to contractors" and "inflate computations of prevailing wages." *Kingston,* 2000 WL 1920355, at \*14. The Board then applied its own case *Detroit Mailers* and determined these reductions were "inimical to public policy." *Id.* The evidence as analyzed under the legal standards enunciated and applied in *Detroit Mailers* is sufficient so that " 'a reasonable mind might accept [it] as adequate to support a conclusion.' " *Mayes,* 276 F.3d at 459 (quoting *Sandgathe,* 108 F.3d at 980). This analysis comports with the Ninth Circuit's *Lee Hotel* decision.

## C.

■ When there is a conflict between the NLRA and another statute, the NLRB follows the standards enunciated in *NLRB v. Lee Hotel Corp.,* 13 F.3d 1347 (9th Cir. 1994). If the Board "wholly ignores equally important Congressional objectives," then the circuit court should not enforce the Board's order. *Id.* at 1351. While not required to "mechanically accept standards elaborated by another agency," the NLRB should resolve conflicts by conducting an "independent inquiry into the requirements of its own statute" (*Id.* (quoting *United Brotherhood of Carpenters and Joiners v. NLRB,* 357 U.S. 93, 111, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958)) (internal quotation marks omitted)) and reconciling the "two statutes in a reasonable way." *Id.*

■ Local 48 claims that the NLRA should trump the Davis–Bacon Act because the Department of Labor will not enforce this type of violation. Since the Davis–Bacon Act would not be "weakened," according to Local 48, the NLRB

should find that the MRP dues are "periodic dues" as defined in the NLRA. However, the holding in *Lee Hotel* requires the NLRB to inquire into the NLRA and then reconcile the conflicts. The NLRB did just that. First, the NLRB resolved conflicts between *Detroit Mailers* and *Teamsters Local 959,* thereby setting out what definition of periodic dues it would use. The NLRB determined that the only issue was whether the MRP dues were inimical to public policy. It then reviewed case law regarding the Davis–Bacon Act. Under *Brock* and *Reich,* the NLRB correctly determined that deductions from employees' wages which revert to contractors and artificially increase the prevailing local wages are antithetical to the purposes of the Davis–Bacon Act. *Kingston,* 332 N.L.R.B. at \*13. The NLRB specifically stated "we are not relying on any construction of 'periodic dues' under Section 8(a)(3) that is inconsistent with ours." *Id.* at \*14. Applying *Detroit Mailers,* the NLRB held that MRPs on Davis–Bacon jobs, which both revert to contractors and tend to increase the local prevailing wage average, are inimical to public policy. *Id.* The NLRB neither wholly ignored other Congressional objectives, nor mechanically applied another agency's rules. The NLRB inquired independently into its own law, and reconciled the NLRA and the Davis–Bacon Act "in a reasonable way." *See Lee Hotel,* 13 F.3d at 1351.

## D.

Local 48's final contention is that the NLRB unreasonably applied the law. In its brief, Local 48 merely speculates about the problems that could arise if MRPs are prohibited on Davis–Bacon jobs. It fails to state any concrete policy argument that warrants denial of enforcement of the NLRB's *Kingston* decision.

### III.

For the forgoing reasons, we enforce the NLRB's December 15, 2000 order, which concluded that payment of MRP dues on Davis–Bacon jobs is inimical to public policy, and therefore, not "periodic dues" within the NLRA.

ENFORCED.

IT IS SO ORDERED.